STATE of North Dakota, Plaintiff
and Respondent,

v.

Dean C. LOUCKS, Defendant and
Appellant.

Cr. No. 438.

Supreme Court of North Dakota.

July 12, 1973.

Helgi Johanneson, Atty. Gen., Bismarck, and Thomas B. Jelliff, State's Atty., and Thomas L. Zimmey, Asst. State's Atty., Grand Forks, for plaintiff and respondent.

David Kessler, Grand Forks, for defendant and appellant.

STRUTZ, Chief Justice.

The defendant was convicted of knowingly possessing a controlled substance, namely, marijuana, in violation of Section 19–03.1–23, subsection 3, North Dakota Century Code. He was sentenced to serve a term of sixty days in the county jail in the city of Grand Forks, with fifty-four days of such sixty-day sentence being suspended upon compliance by the defendant of all the laws and on his good behavior.

The defendant and one Bruce Hoar occupied the same upstairs apartment at 1016 University Avenue in Grand Forks. The defendant had a separate sleeping room, while Hoar slept in the living room.

A search of the apartment was made by police officers who had secured a "no-knock" search warrant, under the provisions of which it was unnecessary for the officers to announce their presence or purpose before entering the premises. The search warrant had been issued by the judge of the county court of increased jurisdiction on the strength of an affidavit executed by the police officer in charge of the raid, in which the officer had stated that he was an officer with the police department of the city and was working as a special investigator dealing with narcotic drugs; that he had received information from a reliable informant who previously had given the officer information which had led to several arrests and convictions; that the reliable informant, within four days prior to the giving of the information, had observed marijuana at the upstairs apartment residence at 1016 University Avenue, which apartment was occu-

pied by one Bruce Hoar, and that such reliable informant had personal knowledge that a quantity of marijuana was located in such apartment; and that the affiant had attended schools on drugs and knew that prohibited drugs might easily be disposed of or destroyed.

At the time of conducting the search, the officers entered the building through a downstairs door and went up the stairs to the apartment described in the warrant. The officers then separated, one group going directly to the living room, which also served as the bedroom of Hoar, and the other group searching the remaining rooms in the apartment, including the defendant's bedroom.

Upon entering the premises, the officer in charge of the raid smelled what he knew from his training and experience to be burning marijuana. As he entered the living room of the apartment, he noticed a number of "baggies" which contained a substance later determined to be marijuana. Further investigation disclosed a paper shopping bag in which there were found seventeen baggies of marijuana. When the search of the living room was conducted, the defendant was seated near the baggies, which were in plain view, in that room. Defendant was using the telephone in the living room, which was the only phone in the apartment. At the time the officers entered the living room, they found a number of visitors present. They immediately showed the search warrant to Hoar and the defendant, placed them both under arrest, and gave the Miranda warnings.

After the arrests, a search of each of the tenants was made by the officers. No marijuana was found on the defendant nor in his room, except for a cigarette butt from a marijuana cigarette and some flakes of marijuana. No evidence that any of the marijuana pipes found in the living room belonged to the defendant was produced, and it is conceded that the defendant was not smoking marijuana when the officers arrived.

The defendant testified that he had been sole occupant of the apartment but had taken Hoar in as a tenant to help cut down the expenses, and that they had shared the apartment for approximately four months. Hoar is a musician, and either practiced at night or was out of the apartment. The defendant wanted to secure a quieter place in which to live, and introduced testimony to show that, prior to the raid, he had advertised on the radio in an effort to find new living quarters, but that he had been unsuccessful. He had not advertised in the newspapers. He denied that he knew that there was any marijuana in the apartment or that anyone was using marijuana in his apartment.

Hoar was convicted of possession of marijuana prior to the defendant's trial. The record shows that he had been smoking marijuana for at least five years.

The defendant, Dean C. Loucks, waived trial by jury and was tried to the court. He was found guilty of possession of marijuana and was sentenced to sixty days in the county jail, with fifty-four days of such sentence being suspended. After imposition of sentence, the defendant perfected this appeal.

The defendant raises four issues:

1. Was the evidence sufficient to convict the defendant of the crime of possession of marijuana under Section 19–03.1–23, North Dakota Century Code?

2. Did the court err in denying the defendant's motion to suppress the evidence obtained under the "no-knock" search warrant?

3. Did the court err in denying the defendant's motion to suppress the evidence obtained under the search warrant on the ground that the county judge was not authorized to issue a "no-knock" search warrant?

4. Did the trial court err in denying the defendant's motion to disclose the identity of the State's informant?

We first will determine whether the evidence was sufficient.

The record discloses that the defendant was the original lessee of the apartment. In order to help pay his rent, he took Hoar in as a roommate, and thereafter each tenant paid one-half of the rental. This arrangement had gone on for more than four months before the time of the search. At the trial, the defendant took the stand and not only denied that any of the marijuana belonged to him but also denied that he had any knowledge that marijuana was in the apartment. He testified:

"Q. . . . Did you know that there was marijuana in the apartment prior to January 17, 1972? Prior to January 17, 1972, had you seen any party use any marijuana in your apartment?

"A. No, I haven't."

The record discloses that the defendant's former roommate, who had moved out of the apartment just prior to the time Hoar moved in, had been convicted of possession of a controlled substance before he was the defendant's roommate.

The defendant denied that he ever knew there were drugs in the apartment, although there were many visitors in the apartment from time to time, and his roommate had smoked marijuana in the apartment. The police officer testified that, prior to the date of the search, the defendant had contacted him on several different occasions relative to being kept informed of the drug-enforcement program of the city police. He offered the officer $125 per week for such information. Later, he offered to become an informer on drugs for the police department. While this testimony of the officer was denied by the defendant, it was for the trial court to weigh the evidence in the case.

All of the above was in the record for the court's consideration in determining whether the defendant was guilty as charged. As the trial court pointed out, the defendant's testimony was incredible. The defendant had shared the apartment with Hoar for more than four months; he had seen the numerous visitors come and go in the apartment; and yet he denied any knowledge of any of the drug activities in the apartment.

On the day of the search and arrest, baggies of marijuana and paraphernalia were all over the living room. Some of the visitors were smoking a substance which the officers recognized as marijuana, having learned to detect the odor of burning marijuana as part of their previous training. See State v. Binns, 194 N. W.2d 756 (N.D.1972).

In spite of all of the above evidence, the defendant testified that he had no knowledge of any drugs in the apartment and that the large amount of drugs found in the living room of his apartment, over which apartment he had control, was not his. It is very unlikely that the defendant did not know what was going on in his own apartment, and the trial court simply did not believe him when he denied any knowledge of drug activities being conducted in his apartment and denied that the drugs were his. There was the further evidence that he had offered the narcotics investigator of the police department $125 per week to be kept informed of the drug-enforcement program of the city police department; and when this offer was refused, he had asked to be hired as an informer. All of this clearly indicates that the defendant was very interested in drugs and the activities of the police in the enforcement of drug laws. In the light of these facts, he could not have been so naive as to be unaware of the drug activities taking place in his own apartment. If he lied about his knowledge of these activities, the trial court had a right to believe that he was lying when he denied that the marijuana found in his apartment, and located in his own presence when he was arrested, was his.

In People v. Nettles, 23 Ill.2d 306, 178 N.E.2d 361 [cert. denied sub nom. Nettles v. Illinois, 369 U.S. 853, 82 S.Ct. 939, 8 L. Ed.2d 12 (1962)], narcotics agents executed a search warrant in a Chicago apart-

ment. The defendant and others were present. The search disclosed a number of packages of narcotics in a paper bag in the apartment behind the entrance door. The Illinois Supreme Court held that the evidence sustained the conviction of the defendant for unlawful possession of the narcotics which were found in the apartment for which he paid the rent and which was under his control.

In the case before us, the defendant points out that Hoar, who had been sentenced for possession of marijuana prior to the trial of the defendant, assumed the entire blame for the presence of marijuana in the apartment, claiming that it was his property. The court, as finder of fact, however, for reasons stated above, believed that the defendant was the owner of some of the marijuana. Viewing the entire record, there was, in our opinion, substantial evidence upon which the court could base its finding that the defendant was in possession of the drug found in his apartment.

■ This court has held that a conviction based upon conflicting evidence will not be disturbed on appeal where there is substantial evidence to sustain the verdict of the jury. State v. Williams, 150 N.W. 2d 844 (N.D.1967); State v. Little Bear, 130 N.W.2d 83 (N.D.1964).

Where a criminal case has been tried to the court without a jury, the only question for the appellate court to determine is whether the circumstantial evidence sustains the trial court's findings. State v. Miller, 202 N.W.2d 673 (N.D.1972).

Having reviewed all the evidence in this case, as summarized in this opinion, it is the conclusion of this court that the evidence sustains the trial court's finding of guilty.

We next will consider issues No. 2 and 3. These two issues are so closely related that it would be difficult to consider one without touching on the other, and therefore they will be considered together.

First, is a judge of the county court of increased jurisdiction authorized to issue a "no-knock" search warrant under the laws of North Dakota?

The defendant asserts that the "no-knock" search warrant issued by the judge of the county court of increased jurisdiction was invalid in view of Section 29–29–08, North Dakota Century Code, which provides:

> "An officer directed to serve a search warrant may break open an outer or inner door or window of a house, or any part of the house, or anything therein, to execute the warrant, (a) if, after notice of his authority and purpose, he be refused admittance, or (b) without notice of his authority and purpose if a *district judge* issuing the warrant has inserted a direction therein that the officer executing it shall not be required to give such notice. The district judge may so direct only upon written petition and proof under oath, to his satisfaction, that the property sought may be easily and quickly destroyed or disposed of, or that danger to the life or limb of the officer or another may result, if such notice were to be given." [Emphasis supplied.]

This statute, enacted by the Legislative Assembly in 1967, authorized the issuance of a "no-knock" search warrant, upon proper showing, but limited such authority to a district judge.

■ In 1971, the Legislative Assembly enacted a special law covering the subject of drugs, known as the "Uniform Controlled Substances Act." Chap. 19–03.1, et seq., N.D.C.C. Section 19–03.1–32 of this special Act includes the following provision for issuance of a "no-knock" search warrant:

> "3. Any officer authorized to execute a search warrant, without notice of his authority and purpose, may break open an outer or inner door or window of a building, or any part of the building, or. anything therein, if the *judge or magistrate*

issuing the warrant has probable cause to believe that if such notice were to be given the property sought in the case may be easily and quickly destroyed or disposed of, or that danger to the life or limb of the officer or another may result, and has included in the warrant a direction that the officer executing it shall not be required to give such notice. Any officer acting under such warrant, as soon as practicable after entering the premises, shall identify himself and state the purpose of his entering the premises and his authority for doing, so." [Emphasis supplied.]

This special law permits a direction to the officer serving the warrant, without notice, to break open an outer or inner door if the "judge or magistrate issuing the warrant" has probable cause to believe that if such notice were given the property sought may be easily and quickly destroyed or disposed of, or that danger to the life or limb of the officer or some other person may result. Included in "judge or magistrate" under this section would be the judge of a county court of increased jurisdiction.

 It is a general rule of statutory construction that where provisions of two statutes are in conflict—in this case whether a "no-knock" search warrant must be issued by a district judge, under the 1967 statute, or whether it may be issued by a judge or magistrate, under the 1971 law—the one enacted last prevails if the two cannot be harmonized. Thus the 1971 law governs. But here we have a further and more compelling reason to hold that the 1971 statute prevails. The 1967 law authorizing the issuance of a "no-knock" search warrant by a district judge was a general statute dealing with issuance of all search warrants. The 1971 Act, on the other hand, authorizing the issuance of "no-knock" search warrants by any judge or magistrate, deals with a specific subject: controlled substances, or drugs. This court has held that where a statute dealing comprehensively with a special subject is

in conflict with a general statute, the one dealing with the specific subject will prevail. Adams County v. Smith, 74 N.D. 621, 23 N.W.2d 873 (1946). In the case before us, we not only have a special statute which deals comprehensively and exclusively with a specific subject, in conflict with a general statute, but this special statute was enacted after the general statute. Where a statute dealing comprehensively and exclusively with a specific subject is in conflict with a prior, more general enactment, the latter, special statute prevails. Thus we find that the judge of the county court of increased jurisdiction had authority to issue the "no-knock" search warrant.

Since the judge of the county court of increased jurisdiction had authority to issue a "no-knock" search warrant, we next must determine whether there was probable cause for the issuance of such warrant in this case.

 The defendant asserts that the showing made by the officer requesting the "no-knock" search warrant was defective in that his affidavit did not specifically state that if the officer were not permitted to execute the search warrant without first giving notice, the property being sought would likely be destroyed or disposed of.

The showing made in support of the application for the warrant might have been stronger if the officer had specifically stated that it was probable that the giving of notice would result in the disposing of or destruction of the marijuana. We do not believe that that was absolutely essential, however. The officer in his affidavit stated that "a reliable informant," who on previous occasions had given information which resulted in at least three convictions, advised that he had seen marijuana at the upstairs apartment described in the warrant within four days before disclosing the information, and that marijuana and other prohibited drugs may be easily disposed of or destroyed. The court may take judicial notice of matters of common knowledge and science as may be known to all men of ordinary understanding and in-

telligence. Sec. 31–10–02, subsec. 84, N.D. C.C. It is common knowledge that drugs may be easily disposed of.

Next, did the trial court err in denying defendant's motion to suppress the evidence obtained under the "no-knock" search warrant, based on the information received from an informant?

■ In State v. Dove, 182 N.W.2d 297 (N.D.1970), this court held that the affidavit for a search warrant may be based on hearsay information and that it did not need to reflect the personal observation or knowledge of the one applying for a warrant. We pointed out that the magistrate must be informed of circumstances from which the informant drew his conclusion that the things sought (drugs) were where he claim they were and of the underlying circumstances from which the officer concluded that the informant was credible and his information reliable. Here, the informant, who previously had given information which proved to be reliable, had advised the officer that he personally had seen marijuana in the premises being searched and that he had personal knowledge of its being there. This, we believe, was sufficient to give the judge probable cause to issue the warrant. He was informed of sufficient circumstances to satisfy the constitutional requirement of probable cause. The result of the search clearly demonstrates that the informant was reliable, and we find from an examination of the entire record and the showing made that there was probable cause for the judge of the county court of increased jurisdiction to issue the "no-knock" warrant on the showing made. The showing was sufficient under the test which the United States Supreme Court laid down in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Thus we find that the judge of the county court of increased jurisdiction not only had the authority to issue the warrant but that there was a sufficient showing to justify the issuance of the "no-knock" warrant.

Prior to the trial of this case, the defendant served a motion to require the State to identify the informant upon whom it relied in requesting the issuance of the warrant. The showing made by the officer in applying for the warrant stated that the affiant had received information from a reliable informant that such informant had observed marijuana on the premises to be searched, within four days of the giving of the information, and that the reliable informant had personal knowledge that marijuana was located at that place. The officer stated that he believed the informant to be reliable because the same informant had given him information in the past which had proved to be reliable, and that at least three convictions had been obtained as the result of information given by this informant. Was the defendant entitled to know the identity of this informant under these circumstances, and was it reversible error for the trial court to deny his request for disclosure of the identity of this person?

This court held in State v. Dove, *supra,* that the identity of an informant ordinarily need not be disclosed. However, the defendant asserts that the present case is an exception to this general rule because the disclosure of the identity of the informant would have been helpful to the defense of the accused and would have lessened the risk of false testimony, and thus would have resulted in a fair determination of the case, citing 76 A.L.R.2d 282. In further support of his contention, the defendant cites the California case of Honore v. Superior Court of Alameda County, 70 Cal.2d 162, 74 Cal.Rptr. 233, 449 P.2d 169 (1969), where the court required the prosecution to disclose the identity of an informant. In that case, the court had before it a question similar to that here facing us. The trial court had denied the defendant's motion for an order to grant pretrial discovery of the name of the confidential informant in a proceeding in which the defendant was charged with possession of marijuana. The informant had stated that on the day preceding the search of the de-

fendant's apartment the informant had visited the apartment which was to be searched and had seen four persons in that apartment. The court held that it was possible that one of these four persons had brought the marijuana into the apartment, rather than that the defendant had done so, and that the testimony of the informant, if he were identified and required to take the stand, "might" result in defendant's exoneration. The court then quoted from People v. Castiel, 153 Cal.App.2d 653, 659, 315 P.2d 79, 82 (1957), as follows:

" '. . . It is the deprival of the defendants of the opportunity of producing evidence which MIGHT [original emphasis] result in their exoneration which constitutes the error in this case, and we cannot assume because the prosecution evidence may seem strong that the undisclosed evidence might not prove sufficient to overcome it in the minds of the jurors.' (Italics added.)"

Whether or not we agree with the California decision in this regard, we believe that the California case of Honore may be distinguished from the case here under consideration. In that case, the reliable informant had visited the defendant's apartment sometime between 3 and 8 p. m. of the day preceding the search. He reported to the officers that four persons were in the apartment. The court held that it was possible that the marijuana found in the search had been brought in by the four persons and that they were in defendant Honore's apartment when the other defendants arrived, and that testimony of the informant as to the identity of the four persons and their activities "might" result in defendants' exoneration. While we do not comment on the decision in the California case, we will point out that in our case the marijuana was seen in the defendant's apartment four days before the search. No mention was made of the presence of anyone in the apartment at the time the marijuana was observed there.

■ We heretofore have held that the name of an informant need not be disclosed to the magistrate nor at a suppression hearing. We affirm that holding, unless such disclosure is necessary to show the informant's reliability. Where the informant was credible and his information was reliable, no disclosure need be made. State v. Dove, supra.

■ The United States Supreme Court has held that the name of an informant need not be disclosed to the magistrate nor at a suppression hearing unless it is necessary to show his reliability, in which event disclosure may be required prior to the trial. McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); Rugendorf v. United States, 376 U.S. 528, 84 S. Ct. 825, 11 L.Ed.2d 887 (1964); Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); Scher v. United States, 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151 (1938).

We have reviewed the entire record in this case and we do not find that disclosure of the identity of the informant was necessary to show his reliability. The magistrate was advised of the previous experience which the officer had had with this informant, and his reliability was established without disclosing his identity.

For reasons stated in this opinion, the conviction of the defendant is affirmed.

PER CURIAM.

The foregoing opinion was prepared by the Honorable Alvin C. Strutz, Chief Justice, before his death. It is adopted by the undersigned as the opinion of this court.

HARVEY B. KNUDSON

WM. L. PAULSON

OBERT C. TEIGEN

RALPH J. ERICKSTAD, C. J.

VOGEL, J., not being a member of this court at the time of submission of this case, did not participate.