**STATE of North Dakota, Plaintiff and Appellee,**

v.

**William J. BERGER, Defendant and Appellant.**

**Cr. No. 679.**

Supreme Court of North Dakota.

Sept. 26, 1979.

Thomas Tuntland, Morton County States Atty., Mandan, for plaintiff and appellee; argued by Mr. Tuntland.

Chapman & Chapman, Bismarck, for defendant and appellant; argued by Daniel J. Chapman, Bismarck.

ERICKSTAD, Chief Justice.

The defendant appeals from a judgment of conviction entered on March 27, 1979 in the Morton County District Court. We affirm.

The defendant, William J. Berger, was convicted on two counts of a violation of Section 19–03.1–23, N.D.C.C., one count referring to delivery of a controlled substance (marijuana) and the other possession of a controlled substance with the intent to deliver (marijuana). The facts that led up to this conviction are as follows:

During the summer of 1978, Peter Blotsky, a Mandan police officer, became acquainted with Susan Blaser, a 16-year-old high school junior, while both were working at a service station in Mandan, North Dakota. According to Blotsky, Blaser approached him sometime in October of 1978 and asked him if he wanted to try marijuana, and a few days later, Blaser again approached Blotsky and offered to get him some marijuana for $45 a bag. Blotsky subsequently reported this conversation to his superiors, and it was decided that an attempt to buy would be made.

A few days prior to November 3, 1978, Blotsky telephoned Blaser at her home and asked her if the deal was still on. She replied that it was, and arrangements were made to meet at the parking lot of the Choice Cut restaurant in Mandan at approximately 7:00 p. m. on November 3rd.

Prior to that meeting, Mandan police detective Dennis Bullinger obtained $45 in cash—two twenty-dollar bills and a five-dollar bill—from the police narcotics fund, and these bills were photocopied, marked with invisible ink and given to Officer Blotsky. Blotsky then went to the arranged meeting spot.

Shortly thereafter, Susan Blaser arrived, but she didn't have the marijuana, so arrangements were made to meet later that evening. At approximately 8:30 p.m. that same evening, Blotsky again met Blaser, who was now accompanied by LuAnn Caya. Blaser stated that she first needed the money in order to purchase the marijuana, so Blotsky handed her the $45 in marked bills. He then followed the two girls to a parking lot of a store at the Twin City Estate Trailer Court in Mandan. There the girls left Blotsky to wait while they purchased the marijuana at the defendant Berger's mobile home, located at 1008 South Frontier in the City of Mandan, with the money Officer Blotsky had given them.

The two girls returned shortly, and the marijuana was delivered to Blotsky at the original meeting spot. Blotsky then radioed Detective Bullinger and Officer Steve Anderson, and they stopped Blaser's car and took the girls to the Mandan Police Department where they were turned over to the juvenile authorities.

At about 11:30 p. m. that same evening of November 3, 1978, application was made for a warrant to search Berger's residence at 1008 South Frontier in Mandan for marijuana, two twenty-dollar bills and one five-dollar bill. The application was heard by the Honorable William G. Engelter, Judge of the Morton County Court of Increased Jurisdiction.

Sworn, recorded testimony was given in support of the search warrant by Mandan police officers Peter Blotsky and Dennis Bullinger, and by LuAnn Caya and Susan Blaser.

Based on the sworn testimony of these four witnesses, Judge Engelter concluded that there was probable cause to believe that marijuana and the marked bills were in Berger's residence or on his person, and he issued a search warrant for Berger's residence, directing that it could be executed at any time of the day or night.

Officers Blotsky and Bullinger, who had been joined by Mandan police officers Steve Anderson and Ardel Quam, then left for Berger's residence. None of the officers were in uniform, so they requested assistance from a uniformed officer to gain entry to Berger's home.

Mandan Chief of Police, Hugo Ternes, joined the four officers outside Berger's residence. An orderly search of the residence was then conducted, resulting in the discovery of twenty bags of marijuana and the marked bills. The officers then gave Berger an inventory of the property seized and left the trailer home.

The following Monday, November 6, 1978, Berger was charged with the two counts upon which he was ultimately convicted.

On December 1, 1978, Berger filed a motion to suppress the evidence seized pursuant to the search warrant. The motion was denied in all respects on February 7, 1979, and on February 14, 1979, Berger was convicted on two counts of a violation of Section 19–03.1–23, N.D.C.C., one count pertaining to delivery of a controlled substance and the other count relating to possession of a controlled substance with the intent to deliver. He appeals to this court from that conviction.

Berger raises several issues on appeal which can be summarized as follows:

(1) Errors in connection with the motion to suppress, and the issuance and execution of the search warrant;

(2) Error in refusal to submit the entrapment defense to the jury;

(3) Error in connection with the admission of evidence when the necessary chain of custody is supplied only by a witness who changed his previous sworn testimony;

(4) Error in failing to grant a motion for acquittal at the close of the State's case; and

(5) Error in failing to comply with the mandatory sentencing provisions.

We will first determine issue (1) which otherwise stated is whether or not the search warrant was issued without probable cause.

The Fourth Amendment to the United States Constitution, Section 18 of the North Dakota Constitution, and Rule 41(c) of the North Dakota Rules of Criminal Procedure, require that probable cause be established prior to the issuance of a search warrant. This requirement guarantees a substantial probability that the invasions involved in a search will be justified.

The United States Supreme Court has said:

"Probable cause under the Fourth Amendment exists where the facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy information, are sufficient unto themselves to warrant a man of reasonable caution to believe that an offense has been or is being committed." *Berger v. State of New York*, 388 U.S. 41, 55, 87 S.Ct. 1873, 1881, 18 L.Ed.2d 1040, 1050 (1967).

■ Whether or not probable cause exists depends on the facts and circumstances of each case, but probable cause to search does not require a prima facie showing of criminal activity. Rather, it relates to the factual and practical considerations of everyday life on which reasonable and prudent men act. *Iverson v. State of North Dakota*, 480 F.2d 414 (8th Cir. 1973), *cert. den.* 414 U.S. 1044, 94 S.Ct. 549, 38 L.Ed.2d 335 (1973); *State v. Mertens*, 268 N.W.2d 446 (N.D.1978).

The United States Supreme Court has long expressed a strong preference for the

use of search warrants over searches without warrants. This preference has resulted in a subtle difference between the probable cause required to sustain a search conducted with a search warrant and the probable cause required to sustain a search conducted without a search warrant. The Court, in *United States v. Ventresca*, 380 U.S. 102, 108–09, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, 689 (1965) stated:

"This is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the 'underlying circumstances' upon which that belief is based. . . . Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a common-sense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants."

■ Probable cause for a search pursuant to a warrant must turn on the facts before the magistrate, and substantial deference will be given to judicial determinations of probable cause. In doubtful or marginal cases, a search under a warrant may be sustainable where without one it would fall. *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *State v. Iverson*, 187 N.W.2d 1 (N.D.1971), *cert. den.* 404 U.S. 956, 92 S.Ct. 322, 30 L.Ed.2d 273 (1971). As long as there is a substantial basis for the magistrate to conclude that narcotics were probably present, and the magistrate is performing his 'neutral and detached' function and not serving as merely a rubber stamp for the police, the judicial determination of probable cause will be sustained.

In the instant case, at approximately 11:30 p. m. on November 3, 1978, application was made for a warrant to search Berger's residence at 1008 South Frontier in Mandan. The items to be searched for included marijuana, two twenty-dollar bills, and one five-dollar bill.

■ In accordance with Rule 41(c), N.D. R.Crim.P., sworn and recorded testimony was given in support of the search warrant by Mandan police officers Peter Blotsky and Dennis Bullinger, and by LuAnn Caya and Susan Blaser, two 16-year-old girls.

The pertinent testimony given by these individuals may be summarized as follows:

Officer Blotsky testified that he had made arrangements to purchase some marijuana from Susan Blaser. At approximately 7:30 p. m. on November 3, 1978, he had met Susan Blaser at the parking lot of a restaurant in Mandan. At that time, Blaser didn't have the marijuana, so arrangements were made to meet later that evening. At approximately 8:30 p. m. that same evening, Blotsky again met Blaser at the same place. Blaser stated that she would need money to purchase the marijuana, and Blotsky handed her $45 in marked bills, two twenties and a five. Blaser then had Blotsky follow her to the parking lot of a store in Mandan, where she left him for a short time. When she returned, she told him she had the marijuana and they returned to the restaurant parking lot where Blaser delivered the marijuana to Blotsky. Blotsky had received training in the recognition of marijuana, and believed the substance Blaser delivered was, in fact, marijuana.

Susan Blaser testified that, accompanied by LuAnn Caya, she had met with Blotsky as previously described, and had received $45 from him. She then went to Berger's residence at 1008 South Frontier in Mandan, and bought the bag of marijuana from Berger with the money that Blotsky had

given her. She then returned and delivered the marijuana to Blotsky.

LuAnn Caya testified that she had been with Susan Blaser and had observed Officer Blotsky give Susan Blaser two twenty-dollar bills and a five-dollar bill. She then accompanied Blaser to Berger's home and observed Berger sell Blaser a bag of marijuana in exchange for the $45. She testified that she further observed Blaser give the marijuana to Officer Blotsky.

Finally, Detective Dennis Bullinger testified that he had given Blotsky two twenty-dollar bills and a five-dollar bill, which had been marked with invisible ink and the serial numbers recorded. He further testified that he had received training in the recognition of marijuana, had examined the substance Blotsky had purchased from Blaser, and believed the substance was marijuana.

Based on the sworn, recorded testimony of these four witnesses, the judge concluded that there was probable cause to believe that marijuana and the marked bills were in Berger's residence or on his person, and he issued a search warrant of Berger's residence, directing that it could be executed at any time of the day or night.

The testimony in the instant case, offered at the hearing to determine whether or not probable cause existed for the issuance of a search warrant, is not burdened by elaborate specificity, and it is obvious that it took place under practical time constraints involved in a criminal investigation of the possession and sale of a drug which is easily disposed of or transported, and which involved money which is transient. However, when judged in a common-sense and realistic fashion, applying practical rather than abstract principles, the testimony presented at the hearing to establish probable cause was sufficient, thereby justifying the issuance of the search warrant.

The judge was presented with live testimony from witnesses having first-hand knowledge and information concerning the purchase and sale of the marijuana. There were none of the usual problems with unidentified informants or hearsay statements. Sufficient deference must be given to judi-

cial determinations of probable cause. It was reasonable for the judge to assume that, under the facts and circumstances presented, more marijuana would be located in Berger's trailer home, and that the marked bills would be there also if the search was permitted promptly.

Berger next contends that the search warrant was improperly executed because the magistrate failed to show "reasonable cause" for execution at night as required by Rule 41(c) of the North Dakota Rules of Criminal Procedure.

Rule 41(c), N.D.R.Crim.P., provides in pertinent part:

"(c) . . . The warrant shall be served in the daytime, unless the issuing authority, by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at times other than daytime."

It is our view that if the record made at the time the warrant is issued discloses reasonable cause for the authorization of a nighttime search, the cause for nighttime search need not be stated on the warrant.

Rule 41(h), N.D.R.Crim.P., defines "daytime" to mean the hours from 6:00 a. m. to 10:00 p. m. Berger claims that the search of his trailer home, which took place after 10:00 p. m., violated Rule 41(c), N.D.R. Crim.P., because the issuing judge failed to show "reasonable cause" for the execution of the warrant at night.

The search warrant in question was drafted on a printed search warrant form which contained the following provision:

"YOU ARE COMMANDED to search, within ten (10) days after receiving this warrant, the (premises) (person) named for the property specified, serving this warrant and making this search (at any time, day or night—being satisfied that the property sought is present or probably will be removed or destroyed *because it is easily disposed* of) and if the property is found there, to seize it, . . ."

We recently said in *State v. Schmeets*, 278 N.W.2d 401, 410 (N.D.1979):

"Rule 41(c), N.D.R.Crim.P., ensures that an impartial issuing authority will determine if there is reasonable cause to justify a search at night. The requirement that the issuing judge must authorize a nighttime search 'by appropriate provision in the warrant' prevents nighttime searches unless the issuing judge has considered the matter, has found reasonable cause for a night search, and has affirmatively authorized it."

Courts have long recognized that nighttime searches constitute greater intrusions on privacy than do daytime searches. *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

██ The warrant form used in this case, although not ideal, does include an appropriate provision for a nighttime search. Unlike the warrant in *State v. Schmeets supra*, this warrant specifically states that the search may be made "at any time, day or night," and thus clearly indicates that it may be served at night.

Furthermore, the language of the warrant directing the nighttime search discloses that the judge was satisfied that the property sought would probably be removed or destroyed because it could be easily disposed of if the search warrant was not promptly served. In light of the time of the day of the application for the search warrant, to-wit: 11:30 p. m., and the other information given to the judge, which is a matter of record, it is reasonable to presume that the judge carefully considered whether or not a nighttime search should be permitted and found that reasonable cause existed for a nighttime search. We therefore conclude that the search warrant complies with the requirements of Rule 41(c), N.D.R.Crim.P.

The second issue to be resolved is Berger's contention that the trial court erred in refusing to submit to the jury an instruction on entrapment as a defense.

The entrapment statute is set out in Section 12.1–05–11, N.D.C.C.

"12.1–05–11. *Entrapment.*—1. It is an affirmative defense that the defendant was entrapped into committing the offense.

"2. Entrapment occurs when a law enforcement agent induces the commission of an offense, using persuasion or other means likely to cause normally law-abiding persons to commit the offense. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

"3. In this section 'law enforcement agent' includes personnel of federal and local law enforcement agencies as well as state agencies, and any person cooperating with such an agency."

██ The test for entrapment in North Dakota is what a normally law-abiding person would do under the circumstances, with the focus being on the conduct of the law enforcement agents. *State v. Mees*, 272 N.W.2d 284 (N.D.1978). The burden of proving entrapment is on the defense, and entrapment is a question for the jury unless there is no dispute as to the facts or inferences to be drawn therefrom. *State v. Pfister*, 264 N.W.2d 694 (N.D.1978).

██ The record in this case shows that Susan Blaser was not a "law enforcement agent" within the meaning of Section 12.1–05–11(3), N.D.C.C. She said at the trial that she never thought she was working for Officer Blotsky. She was not cooperating with Blotsky or any law enforcement agency in an attempt to induce the defendant to commit an offense. The purchase of marijuana was merely as an accommodation to Blotsky, and Blaser believed the marijuana was for Blotsky's private use.

We thus conclude that there were not sufficient facts and inferences present to warrant instruction to the jury on entrapment, and, accordingly, the refusal to submit such an instruction was proper.

The third major issue presented to this court by Berger is whether or not the trial court erred in allowing into evidence the bag of marijuana purchased by Officer Blotsky from Susan Blaser. The defendant contends that the necessary chain of custody was not established, and that it was error to allow the witness who was called in

the attempt to establish the chain to be recalled.

The record before us indicates, inter alia: that the State called Officer Blotsky as a witness; that he testified that after receiving the bag of marijuana from Susan Blaser he gave the bag to Officer Anderson for safekeeping, and that Anderson then returned the bag to Blotsky the following morning when Blotsky delivered the marijuana to the State Laboratory for analysis; that on cross-examination, Blotsky affirmed this sequence of events; that Officer Anderson was called to the witness stand the next day and testified that he did not receive the bag of marijuana from Blotsky; that Officer Blotsky was then recalled to the stand, over strenuous objection by defense counsel, and that Blotsky then said that his previous testimony was incorrect, that he had not given the bag of marijuana to Anderson, but had instead placed the bag in his locker at the police department and delivered the marijuana the next morning to the State Laboratory.

■ Section 29–21–01, N.D.C.C., sets forth the order in which a trial must proceed. The State is nowhere prohibited from recalling a witness prior to the defense putting on its case. Furthermore, it is within the trial court's discretion to change the order of trial if there is good reason to do so. Section 29–21–02, N.D. C.C.; *State v. Otto*, 245 N.W.2d 885 (N.D. 1976).

■ We conclude that the trial court, in allowing the State to recall the witness to correct his testimony from the previous day and establish the necessary chain of custody, did not abuse its discretion. The court accordingly acted within the power provided under Section 29–21–02, N.D.C.C.

We so hold, especially in light of the fact that the witness was subjected to intense cross-examination, and counsel for the defense conceded in oral argument before us that he pointed out in closing argument to the jury, Blotsky's inconsistent testimony. The credibility of witnesses and the weight to be given their testimony are, of course, questions of fact for the jury to determine. *Belinskey v. Hansen*, 261 N.W.2d 390 (N.D. 1977).

With reference to the chain of custody problem, the chain of custody rule has been described by this court as serving a dual purpose of demonstrating that

". . . (1) the evidence offered is the same as that seized, and (2) it is in substantially the same condition." *State v. Lange*, 255 N.W.2d 59, 66 (N.D.1977).

■ The rule insures that the items seized have not been contaminated, altered, or exchanged for other items more incriminating.

■ In regard to the admissibility of evidence under the chain of custody rule, this court has followed, and will continue to follow, the rule enunciated by the Minnesota Supreme Court in *State v. Johnson*, 307 Minn. 501, 239 N.W.2d 239, 242 (1976):

"There can be no rigid formulation of what showing is necessary in order for a particular item of evidence to be admissible. Rather, admissibility must be left to the sound discretion of the trial judge. [Citations omitted.] He must be satisfied that, in all reasonable probability, the item offered is the same as the item seized and is substantially unchanged in condition. [Citations omitted.]

"Admissibility should not depend on the prosecution negativing all possibility of tampering or substitution, but rather only that it is reasonably probable that tampering or substitution did not occur. Contrary speculation may well affect the weight of the evidence accorded it by the factfinder but does not affect its admissibility. [Citations omitted.]" *State v. Lange, supra* at 66.

■ The admission or exclusion of demonstrative evidence is within the sound discretion of the trial court. *Gleson v. Thompson*, 154 N.W.2d 780 (N.D.1967). We are satisfied that there was no abuse of discretion in this case.

The fourth issue on appeal is over the trial court's failure to grant Berger's motion for acquittal at the close of the State's case.

Berger contends that there was not sufficient evidence before the jury to convict the defendant of either delivery of a controlled substance or possession with the intent to deliver.

When the sufficiency of the evidence is challenged on appeal, we must view all of the evidence in a light most favorable to the verdict. *State v. Larson*, 274 N.W.2d 884 (N.D.1979).

After carefully reviewing the entire record, we find that there was clearly sufficient evidence presented, both direct and circumstantial, to allow reasonable men to conclude that the defendant was guilty on both counts. It was therefore proper for the trial court to deny the motion for acquittal and give the case to the jury.

Finally, Berger contends that the trial court erred in failing to comply with the mandatory sentencing procedures in Section 12.1–32–02(5), N.D.C.C., which provide:

"5. All sentences imposed shall be accompanied by a written statement by the court setting forth the reasons for imposing the particular sentence. The statement shall become part of the record of the case."

The defendant contends that the required written statement, setting forth the court's reasons for imposing the sentence of five years on each count with four years suspended, and a $5,000 fine on each count plus the costs of prosecution, was not executed in this case. Therefore the trial court erred, and may have relied upon impermissible factors in sentencing the defendant.

This argument is without merit, for a written statement upon sentencing was executed in this case and is part of the judgment roll.

For the reasons stated in this opinion, the judgment and sentences appealed from are affirmed.

SAND, PAULSON, PEDERSON and VANDE WALLE, JJ., concur.