**The STATE of North Dakota,**
**Plaintiff and Appellant,**

v.

**Michael BORDEN, Defendant**
**and Appellee.**

**The STATE of North Dakota,**
**Plaintiff and Appellant,**

v.

**Keith DOWTY, Defendant and Appellee.**

**Cr. Nos. 780, 781.**

Supreme Court of North Dakota.

Feb. 18, 1982.

Richard L. Schnell, State's Atty., Mandan, for plaintiff and appellant.

No argument or briefs were presented on behalf of appellee Michael Borden.

Bair, Brown & Kautzmann, Mandan, for defendant and appellee Keith Dowty; argued by Dwight C. H. Kautzmann, Mandan.

PAULSON, Justice.

This is an appeal from the two orders suppressing evidence dated June 17, 1981, of the District Court of Morton County. We reverse.

Michael Borden rented motel Room No. 208 in the Seven Seas Motel, Mandan, North Dakota, on March 2, 1981. On the evening of Monday, March 2, 1981, Raymond Heidt, a security guard at the Seven Seas Motel, contacted Lieutenant Dennis Bullinger, a detective with the Mandan Police Department. Lieutenant Bullinger drove to the Seven Seas Motel and learned from Mr. Heidt that there was considerable activity going on in Room 208. Lieutenant Bullinger then checked the license number of an automobile which had been driven by a male visitor who was in Room 208 with Mr. Borden. Lieutenant Bullinger contacted the Bismarck Police Department and was informed that the automobile was registered to Kenneth Hessinger of Bismarck, a person who was allegedly active in local drug traffic. Lieutenant Bullinger then commenced a surveillance of Room 208 until approximately 2 a. m. of Tuesday, March 3, 1981.

During the evening of March 3, 1981, Lieutenant Bullinger was contacted by Mr. Barry Davis, the owner and manager of the Seven Seas Motel, who informed Bullinger that the security guard, Mr. Heidt, had overheard persons occupying Room 208 mention that they had "two pounds to get rid of". Shortly thereafter, Bullinger contacted the Morton County state's attorney, Richard L. Schnell, who directed Bullinger to continue the surveillance of Room 208.

Bullinger, together with Captain Michael Quinn and Detective Donald Seifert of the Mandan Police Department, drove to the Seven Seas Motel to continue the surveillance of Room 208. Officers Quinn and Bullinger stationed themselves in Room 210, which was adjacent to Room 208. A short time later, an individual from Room 208 permitted the entrance of another person into the motel through a locked, outside door; both of them proceeded to Room 208. The two officers then overheard a discussion concerning money between two individuals in Room 208. Later, a person called "Danny" entered Room 208; subsequently, the officers overheard a discussion taking place in Room 208 with reference to "25 pounds".

As the officers were leaving Room 210 at approximately 2:30 a. m. on March 4, 1981, they noticed two wastebaskets located in the hallway just outside Room 208. They examined the contents of the wastebaskets and discovered what they believed to be marijuana (roaches), hypodermic syringe caps, bloody facial tissues, money due slips, marijuana seeds, and a hospital receipt issued to Mr. Borden.

The officers then left with these items, which they had removed from the two wastebaskets, and contacted the Morton County state's attorney in order to schedule a meeting with him early that morning. Lieutenant Bullinger then dispatched Officer Seifert and Mandan Patrolman Craig Sjoberg to the Seven Seas Motel to guard Room 208.

Officers Bullinger and Quinn then contacted Mr. Aaron E. Rash, supervisor of the Crime Laboratory of the State Laboratories Department, at his residence in Bismarck. Rash, after examining the materials which the officers had recovered from the wastebaskets, concluded as his opinion that one of the substances in the wastebaskets was marijuana. Verification tests were not conducted at that time to confirm Rash's opinion.

Officers Bullinger and Quinn then contacted the Morton County state's attorney, who prepared a "no-knock" search warrant directing the officers to conduct a search of Room 208 of the Seven Seas Motel and to conduct a search of the person of Borden. A hearing was held before the Honorable William G. Engelter, Judge of the Morton County Court of Increased Jurisdiction, and Judge Engelter determined that there was

probable cause for the issuance of such a warrant. The "no-knock" search warrant was therefore issued, pursuant to § 19–03.-1–32 of the North Dakota Century Code.

At approximately 8:45 a. m. on March 4, 1981, five officers drove to the Seven Seas Motel and waited in motel rooms adjacent to or in the vicinity of Room 208. While the officers were waiting, Officers Bullinger and Quinn obtained master keys and practiced the opening of locks on other unoccupied motel rooms nearby.

At approximately 9:20 a. m., on March 4, 1981, the officers executed the search warrant. They unlocked the door to Room 208 and entered the room with guns drawn. Borden and his companion, Keith Dowty, were each handcuffed and transferred from Room 208 to Room 210 of the motel. Borden and Dowty each received a copy of the search warrant and were given *Miranda* warnings. Room 208 was searched while Borden and Dowty were in Room 210. A short time later Borden and Dowty were placed under arrest for possession of a controlled substance and for possession of a controlled substance with intent to deliver.

Dowty was then returned to Room 208, permitted to dress, and handed a copy of the search warrant, a copy of the inventory, and a separate receipt for $263.00. Dowty inquired as to additional money in Room 208 and led the officers to $4,000 in a plastic bag. Officer Bullinger took the money and delivered a receipt to Dowty for such amount.

Prior to the suppression hearing, a preliminary hearing was held before Judge Engelter, and Borden and Dowty were bound over to the District Court of Morton County for trial. Borden and Dowty then brought a motion to suppress the evidence. After a hearing on the motion to suppress, the district court ordered a suppression of the evidence recovered in the search of Room 208. The State appeals from those two orders.

We are presented with the following issues:

1. Does the State's failure to file the mandatory prosecutor's statement with the notice of appeal, as required by § 29–28–07(5), N.D.C.C., warrant dismissal of the appeal?

2. Was the "no-knock" search warrant issued pursuant to § 19–03.1–32(3), N.D.C.C., valid?

### I

██ We must first determine whether or not the State has the right to take this appeal. In a criminal action, the State has only such right of appeal as is conferred by law. *State v. McEnroe*, 69 N.D. 445, 287 N.W. 817, 818 (1939). Section 29–28–07(5), N.D.C.C., provides that the State may appeal from:

"5. An order granting the return of property or suppressing evidence, or suppressing a confession or admission, when accompanied by a statement of the prosecuting attorney asserting that the deprivation of the use of the property ordered to be returned or suppressed or of a confession or admission ordered to be suppressed has rendered the proof available to the state with respect to the criminal charge filed with the court, (1) insufficient as a matter of law, or (2) so weak in its entirety that any possibility of prosecuting such charge to a conviction has been effectively destroyed. The statement shall be filed with the clerk of district court and a copy thereof shall accompany the notice of appeal."

The appellee Dowty[1] contends that the State has no right to take this appeal because it failed to file the required statement along with the notice of appeal.

The parties did not raise or discuss this issue in the briefs. Counsel for Dowty raised the issue at oral argument, and at

1. Counsel for the appellee Michael Borden withdrew after the notice of appeal had been filed. Mr. Borden did not submit a brief and

was not present or represented by counsel at oral argument.

that time made a motion to dismiss the appeal. On rebuttal, the State moved that it be allowed to file the required statement late. On December 21, 1981, the State filed its statement.

Although we do not condone this delay in filing, we do not believe it warrants dismissal of the appeal, particularly where the appellees have not challenged the content of the statement but only the date of its filing. *State v. Fields*, 294 N.W.2d 404, 406 (N.D.1980). *See also State v. Harris*, 286 N.W.2d 468, 470 (N.D.1979). We also note the following language from our opinion in *Fields, supra* 294 N.W.2d at 406:

"However, our decision to allow the appeal should not be read as shifting to a defendant the burden of proving that the State could still reasonably prosecute without the suppressed evidence. Nor does it mean that in the future this court will not consider dismissing appeals for failure to file the prosecutor's statement with the notice of appeal."

The motion to dismiss is denied.

## II

■ The next issue presented is whether or not the "no-knock" search warrant issued pursuant to § 19–03.1–32(3), N.D.C.C., was valid. Section 19–03.1–32(3), N.D.C.C., provides:

"*19–03.1–32. Powers of enforcement personnel.—Search warrants.*

. . . . .

"3. Any officer authorized to execute a search warrant, without notice of his authority and purpose, may break open an outer or inner door or window of a building, or any part of the building, or anything therein, if the judge or magistrate issuing the warrant has probable cause to believe that if such notice were to be given the property sought in the case may be easily and quickly destroyed or disposed of, or that danger to the life or limb of the officer or another may result, and has included in the warrant a direction that the officer executing it shall not be required to give such notice. Any officer acting under such warrant, as soon as practicable after entering the premises, shall identify himself and state the purpose of his entering the premises and his authority for doing so."

The State contends that the district court erred in reaching the conclusion that the magistrate in this case did not have probable cause to believe that the property might be quickly or easily disposed of if notice were given. The district court based its conclusion on the fact that "all of the evidence here points toward a large quantity of drugs involved" and on the lack of testimony by the officers regarding the ease with which the evidence could have been destroyed or disposed of.

Initially, we note that this court has previously held that it is not essential for the requesting officer in his affidavit or testimony to specifically state that it is probable that the giving of notice will result in the destruction or disposal of the drugs. *State v. Loucks*, 209 N.W.2d 772, 777 (N.D.1973). In *Loucks*, this court went on to hold that it is "common knowledge" that drugs may be easily disposed of, and the court may take judicial notice of this fact. *Loucks, supra* 209 N.W.2d at 777–778. The court in *Loucks* therefore upheld a "no-knock" search warrant where the supporting affidavit indicated only that an informer had advised the police that he had seen marijuana at the apartment in question within four days before disclosing the information. *Id.* at 777.

The district court in the instant case concluded that *Loucks* was inapplicable because the evidence here pointed to a large quantity of drugs. We disagree with this conclusion. Close examination of the transcript of the officers' testimony in support of the application for the warrant indicates that the magistrate was apprised of the following facts: there had been considerable traffic in and out of Room 208 on March 2 and 3, 1981, including persons alleged to be involved in local drug activity; some time on March 3, 1981, the security guard at the Seven Seas Motel, Raymond Heidt, had

overheard the two men staying in Room 208 mention that they had "two pounds to get rid of" by March 4, 1981; after Heidt overheard the conversation regarding "two pounds to get rid of", several other persons visited Room 208, and discussions regarding money were overheard; one of the people who visited Room 208 that evening, a female, stated something regarding "25 pounds"; upon completing their surveillance in the early morning hours of March 4, 1981, the officers discovered marijuana "roaches", marijuana seeds, and syringe caps with traces of blood on them in two wastebaskets directly outside the door of Room 208.

We do not agree with the district court's conclusion that, based on the officers' testimony in support of the warrant, "all of the evidence" indicated that a large quantity of drugs was involved and, therefore, that there was no probable cause to believe that the drugs might be easily disposed of. The evidence indicates that the appellees were conducting drug sales in Room 208. On March 3, 1981, they were overheard mentioning that they had "two pounds to get rid of" by the next day, and several persons (the testimony indicates at least five) visited the room during that evening. The logical conclusion to be drawn from this evidence is that the appellees were conducting drug sales in Room 208 and had a diminishing quantity of drugs on hand in the room. The words "25 pounds" which the officers overheard were spoken by a female visitor to Room 208, not by one of the appellees. Based upon the testimony presented to the magistrate in support of the warrant, we believe it would be logical to conclude that on March 4, 1981, the appellees had an unknown quantity of marijuana, probably less than two pounds, in their possession in Room 208.

In addition, the fact that the officers found bloody syringe caps in the wastebaskets outside the door to Room 208 might indicate that there were other, "hard" drugs present in Room 208. In such a case, the magistrate might conclude that the occupants of the room might try to dispose of these "hard" drugs if the police were re-

quired to knock and announce before executing the search warrant.

We therefore conclude that the facts in this case are sufficiently similar to those in *Loucks, supra,* to draw an analogy between the two cases. The magistrate in the instant case had reason to believe that unknown quantities of marijuana and "hard" drugs were present in Room 208. Under *Loucks, supra,* the magistrate was allowed to take judicial notice of the fact that drugs are easily disposed of. We therefore conclude that the magistrate in this case had probable cause to believe that the drugs might have been "easily or quickly destroyed or disposed of" if the officers were required to give notice before executing the search warrant. Therefore, the "no-knock" search warrant issued pursuant to § 19–03.-1–32(3), N.D.C.C., was valid.

Both of the orders of the district court suppressing all evidence resulting from the search of Room 208 at the Seven Seas Motel are reversed.

ERICKSTAD, C. J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.