STATE of North Dakota, Plaintiff
and Appellee,

v.

Michael Adam KNUDSON, Defendant
and Appellant.

Cr. No. 920257.

Supreme Court of North Dakota.

May 11, 1993.

Patricia L. Burke, State's Atty., Bismarck, for plaintiff and appellee.

Wayne D. Goter, Bismarck, for defendant and appellant.

LEVINE, Justice.

Michael Adam Knudson appeals from a district court judgment of conviction of possession of drugs with intent to deliver and without a tax stamp and possession of drug paraphernalia, entered upon conditional pleas of guilty under Rule 11(a)(2), NDRCrimP. Knudson challenges an order denying suppression of evidence seized in a search authorized by what he claims was an invalid nighttime, "no-knock" search warrant. We affirm.

■ A trial court's denial of a suppression motion will be reversed if, after resolving conflicts in the testimony in favor of affirmance, there is insufficient competent evidence fairly capable of supporting the trial court's determination. *E.g., State v. Placek,* 386 N.W.2d 36 (N.D.1986). This standard of review acknowledges the significance of the trial court's opportunity to assess the credibility of witnesses and to weigh their testimony. *State v. Kettleson,* 486 N.W.2d 227 (N.D.1992). Our recitation of the facts reflects this standard of review.

During the evening of February 29, 1992, Officer Roger Becker of the Bismarck Police Department appeared personally before a magistrate to seek a search warrant for Knudson's residence. He testified that a reliable, confidential informant had, within the past twelve hours, observed a number of one-quarter ounce baggies of marijuana in a plastic container and firearms at Knudson's residence and a dog kenneled near the front door of the residence. Becker stated that the firearms and the dog concerned him and that, in his experience, drugs and drug paraphernalia were items that individuals would attempt to hide or destroy if the officers executing the warrant were to knock and announce their authority and purpose before entering and conducting a search.

The magistrate found probable cause and issued a search warrant at 10:48 p.m. The warrant expressly authorized entry into Knudson's residence without the need to give prior notice of authority and purpose; it also specified that the search could be made "at any time, day or night."

The warrant was executed at approximately 12:10 a.m. the next morning, resulting in the seizure of marijuana and drug paraphernalia. Knudson was arrested and charged with possession of a controlled substance with intent to deliver, possession of marijuana without a tax stamp and possession of drug paraphernalia. After being bound over to district court and arraigned there, Knudson pleaded not guilty to the charges. He then moved to suppress the evidence seized, arguing, inter alia, that the no-knock and nighttime provisions of the warrant were not supported by "reasonable cause." The district court denied the motion. Knudson then offered, and the district court accepted, conditional pleas of guilty to the charges. *See* NDRCrimP 11(a)(2). The court subsequently entered judgment of conviction against Knudson on all charges and Knudson appealed.

Knudson first contends that the nighttime search[1] provision was improper because it did not meet the requirement of "reasonable cause" under Rule 41, NDRCrimP. Rule 41 says, in pertinent part:

"The warrant may be served in the daytime, unless the issuing authority, by appropriate provision in the warrant, *and for reasonable cause shown,* authorizes its execution at times other than daytime." (Emphasis added.)

The State counters that "reasonable cause" is not a necessary precondition for authorizing a nighttime search in a drug case, because NDCC § 19–03.1–32(2), not NDRCrimP 41, governs drug cases. Section 19–03.1–32(2) says that "[a] search warrant relating to offenses involving controlled substances may be issued and executed at any time of the day or night, if the

---

1. A nighttime search is one conducted between the hours of 10:01 p.m. and 5:59 a.m. *See* NDRCrimP 41(h).

judge or magistrate issuing the warrant so specifies in the warrant." The State relies on the rule of statutory construction that a statute dealing with a special subject will prevail over a more general statute, if the two conflict. *See* NDCC § 1–02–07. The State asserts that there is a conflict between the statute and the rule over whether reasonable cause is required to issue a nighttime search warrant and the statute should prevail over the more general rule. Accordingly, the provision for a nighttime search was appropriate in this case, says the State, because, under the statute, the magistrate merely had to, and did, specify in the warrant that the search could be executed at any time of the day or night. We disagree.

■ Our Constitution authorizes this court to promulgate rules of procedure to be followed by all courts of the state. N.D. Const. Art. VI, § 3. We have said that Art. VI, § 3, places final authority over procedural rules with the North Dakota Supreme Court and "mandates that a court-promulgated procedural rule prevails in a conflict with a legislatively enacted rule of procedure." *City of Fargo v. Ruether,* 490 N.W.2d 481, 483 (N.D.1992) [quoting *City of Fargo v. Dawson,* 466 N.W.2d 584, 586 n. 4 (N.D.1991) ]. This plenary authority clearly includes the promulgation of rules for the issuance of search warrants. However, "statutorily enacted rules of procedure which supplement the rules we have promulgated may remain in effect until superseded or amended by this court," *id.,* and, when viewing a procedural statute and rule which may or may not conflict, we have demonstrated a preference for harmonizing the two when possible. *E.g., Id.; Kiker v. Walters,* 482 N.W.2d 626 (N.D.1992); *Dawson, supra.*

■ Given our preference for harmony over conflict, and reading the rule and statute together, we do not believe the two conflict. Both require the magistrate to indicate in the warrant that a nighttime search has been authorized. Rule 41 contains the additional requirement that there be a sufficient showing of reasonable cause to justify authorization of a nighttime search. The statute is silent on the subject of reasonable cause. The Rule thus supplements the statute, rather than contradicts it. Aside from the obvious Fourth Amendment implications that the State's argument raises, it also collides with another common principle. The legislature does not require idle acts. NDCC § 31–11–05; *Larson v. Wells County Water Resource Bd.,* 385 N.W.2d 480 (N.D.1986). It would, indeed, be an empty gesture to require magistrates to consider a request for a nighttime search warrant for controlled substances without requiring them to use some benchmark in deciding whether to issue a nighttime warrant. The Rule 41(c) reasonable-cause-standard provides that lodestar. Reading the Rule's requirement for reasonable cause to search at night into the statute also coheres with our recognition that "nighttime searches constitute greater intrusions on privacy than do daytime searches." *State v. Berger,* 285 N.W.2d 533, 538 (N.D.1979). They, therefore, should be authorized only after careful consideration and Rule 41 provides the benchmark for that consideration.

■ Rule 1, NDRCrimP, makes clear that our Rules of Criminal Procedure apply to all criminal proceedings except for those listed in Rule 54, NDRCrimP. Rule 54, NDRCrimP, does not except NDCC ch. 19–03.1 from the reach of the Criminal Rules. In studying and recommending the adoption of Rule 41, the Joint Procedure Committee of the Supreme Court considered ch. 19–03.1, NDCC. *See* Procedure Committee Minutes of November 16, 1971, at page 11. The minutes do not disclose any view by members of the Committee that the reasonable cause requirement of Rule 41 would conflict with section 19–03.1–32, NDCC. We conclude that Rule 41 and section 19–03.1–32, when read together, are easily harmonized. Consequently, a nighttime search warrant sought under section 19–03.1–32(2) may properly issue only if there is reasonable cause.

Knudson argues that "there was absolutely no cause shown why the search warrant should authorize execution at night, and there was certainly nothing amounting

to reasonable cause shown for such a provision in the search warrant." He contends that reasonable cause for a nighttime search provision is established only by a particularized showing that the evidence sought will likely be disposed of by morning, and, therefore, is not established by a mere showing that controlled substances are the evidence sought.

■ This court has historically construed the terms "reasonable cause" and "probable cause" to be interchangeable. *See, e.g., State v. Hensel,* 417 N.W.2d 849, 852 (N.D.1988) [" '[R]easonable cause' under section 29–06–15, N.D.C.C., is synonymous with the more widely used term 'probable cause.' "]; *State v. Vermilya,* 395 N.W.2d 151 (N.D.1986) [probation condition permitting search without warrant "upon reasonable cause" synonymous with condition permitting search without warrant upon "probable cause."]; *Asbridge v. N.D. State Highway Commissioner,* 291 N.W.2d 739 (N.D.1980) ["reasonable grounds" under section 39–20–04, NDCC, synonymous with terms "probable cause" and "reasonable cause."]. Indeed, Rule 41(c) of the Federal Rules of Criminal Procedure, as well as our own Rule, both use the terms interchangeably. Accordingly, we conclude that "reasonable cause" under Rule 41(c), NDRCrimP, is synonymous with "probable cause." Although there may be a variety of circumstances that justify the authorization of a nighttime search, we have indicated that probable cause for a nighttime search exists upon a showing that the evidence sought may be quickly and easily disposed of, *State v. Berger,* 285 N.W.2d 533, and we have taken judicial notice that drugs are such evidence. *E.g., State v. Borden,* 316 N.W.2d 93 (N.D.1982).

In *Berger, supra,* we concluded that a warrant authorizing a nighttime search complied with Rule 41(c), NDRCrimP, because it specifically stated that it could be executed during the daytime or nighttime and "disclose[d] that the judge was satisfied that the property sought would probably be removed or destroyed because it could be easily disposed of if the search warrant was not promptly served." *Id.* at 539. We also emphasized that the warrant was applied for at 11:30 p.m., an indication that a nighttime search was contemplated by the applicant and considered by the magistrate, and that the magistrate was given other information supporting the nighttime search.

■ This case is not materially different from *Berger.* Here, the magistrate affirmatively authorized execution of the warrant at night, expressly noted her satisfaction that the contraband probably would be moved or destroyed, and issued the warrant at 10:48 p.m. Furthermore, the reasonableness of the inclusion of the nighttime provision was bolstered by the relatively small quantities of drugs.[2] The magistrate properly gave little, if any, weight to Officer Becker's concern over the presence of firearms and the dog. Doubtless, the magistrate recognized that "an unannounced entry by officers increases the potential for violence by provoking defensive measures a surprised occupant would otherwise not have taken had he known that the officers possessed a warrant to search his home." *State v. Sakellson,* 379 N.W.2d 779, 782 (N.D.1985). So, here, as in *Berger,* we think it is "reasonable to presume that the judge carefully considered whether or not a nighttime search should be permitted and found that reasonable cause existed for a nighttime search." 285 N.W.2d at 539.

**2.** The Eighth Circuit Court of Appeals suggests that the barometer of the reasonableness of "no-knock entries based upon a general or blanket judgment that contraband such as drugs will otherwise be destroyed," is the quantity of drugs suspected to be at the structure to be searched. *United States v. Moore,* 956 F.2d 843 (8th Cir. 1992). The Court cogently observed that "[i]t is reasonable for police officers to assume that suspects selling illegal drugs in small quantities from a residence that has normal plumbing facilities will attempt to destroy those drugs if officers knock before a search warrant is executed.... On the other hand, a blanket rule permitting no-knock search warrants in all drug cases, regardless of whether the forms and quantities suspected to be present can be readily destroyed, is patently unjustifiable and would invite unnecessarily violent and intrusive execution of many search warrants." *Id.* at 850.

Knudson also contests the validity of the no-knock warrant provision. Section 19–03.1–32(3), NDCC, provides:

"Any officer authorized to execute a search warrant, without notice of the officer's authority and purpose, may break open an outer or inner door or window of a building, or any part of the building, or anything therein, if the judge or magistrate issuing the warrant has probable cause to believe that if such notice were to be given the property sought in the case may be easily and quickly destroyed or disposed of, or that danger to the life or limb of the officer or another may result, and has included in the warrant a direction that the officer executing it is not required to give such notice. . . ."

The purpose of the no-knock warrant is to protect the safety of law enforcement officers and the integrity of evidence. A no-knock warrant in drug cases is available under this statute, because we have taken judicial notice that those in possession of controlled substances ordinarily are on the alert to destroy the typically easily disposable evidence quickly at the first sign of a law enforcement officer's presence. *See State v. Borden, supra; State v. Loucks,* 209 N.W.2d 772 (N.D.1973). In *Loucks,* we upheld a no-knock search warrant where the supporting affidavit indicated only that an informer had seen marijuana at the defendant's apartment. In *Borden,* we reaffirmed the principle, espoused in *Loucks,* that magistrates are entitled "to take judicial notice of the fact that drugs are easily disposed of." 316 N.W.2d at 97.

Knudson concedes that *Loucks,* if followed, is dispositive of the no-knock issue in this case, but urges us to overrule *Loucks.* We decline the invitation to overrule *Loucks.* Here, Knudson's possession of a relatively small quantity of drugs raised the specter of the quick and easy disposability of evidence. Accordingly, we are satisfied that the magistrate's authorization of the no-knock entry was proper.

Affirmed.

VANDE WALLE, C.J., MESCHKE and NEUMANN, JJ., concur.

RALPH J. ERICKSTAD, Surrogate Judge, concurs in result.

RALPH J. ERICKSTAD, Surrogate Judge, sitting in place of SANDSTROM, J., disqualified.