STATE of North Dakota, Plaintiff and Respondent,

v.

Dee Dee GOVAN, Defendant and Appellant.

Cr. 310.

Supreme Court of North Dakota.

Aug. 22, 1963.

William R. Mills, Bismarck, for defendant and appellant.

Helgi Johanneson, Atty. Gen., Bismarck, and Richard B. Thomas, State's Atty., Minot, for plaintiff and respondent.

BURKE, Judge.

The defendant was convicted in the District Court of Ward County of the crime of receiving the proceeds or earnings of a woman engaged in prostitution. He has appealed from the judgment of conviction.

It appears from the record that defendant is the owner of a home located in rural Ward County. The home is a two-story structure with ordinary living and service rooms upon the ground floor and four bedrooms and a bath on the second floor. On June 27, 1962 at about two o'clock a. m. a group of eight police officers and an Assistant Attorney General arrived at this home armed with what is designated a "health order." Neither this order nor the showing upon which it was issued are in evidence but the testimony indicates that

the order directed the officers to take one Aritha Robinson, a resident in the house, into custody for a physical examination. The group of officers entered the house, uninvited, by opening an unlocked door. Immediately upon entering, some of the officers rushed upstairs and again without invitation entered the bedroom of Aritha Robinson. There they found Aritha Robinson and a male person in circumstances which clearly indicated that the crime of assignation, as defined by statute, had been committed. Aritha Robinson was immediately placed under arrest upon such charge. According to the officers' testimony she freely admitted the commission of the crime and told them that she divided the proceeds of her prostitution with the defendant. She also told them that she placed the money she received behind a certain picture in the defendant's room. The officers then searched defendant's room and found $20.00 in currency behind the described picture. The defendant was not present at any time while the officers were at his home.

On June 2, 1962, Aritha Robinson pleaded guilty to the crime of assignation and was sentenced to a year in the county jail. Thereafter the defendant was charged with the crime of receiving the proceeds or earnings, in whole or in part, of a woman engaged in prostitution. The principal witness against the defendant was Aritha Robinson. At his trial she testified that she came to Minot at defendant's request for the purpose of engaging in prostitution at his house. In exchange for providing her with board and a place to conduct her business defendant was to receive 50 percent of her receipts. She stated a settlement had been made once a week and that she had paid defendant his share each week according to agreement.

Defendant testified in his own behalf. He stated that Aritha Robinson came to his home, told him that she was to marry a soldier who would soon be returning to the Minot Air Force Base and requested a place to live until the soldier arrived and they could be married. He said he knew that Aritha Robinson had been a prostitute and that he told her that she could stay at his home for $15.00 a week if she would keep the place clean and not engage in prostitution. Defendant owned and operated a restaurant in Minot which was known as "The Grill." It was open from eleven o'clock a. m. until two or three o'clock a. m. When defendant was asked, "Did Miss Robinson give to you any money, no matter how little, as a part or portion of her earnings from prostitution? He replied, "Well, she paid me her rent. If it came from prostitution I didn't know where it came from."

Upon this appeal there are eighteen specifications of error. Ten of them relate to the instructions given or to the failure to give proper instructions. Eight relate to claimed error in the reception of evidence.

The first challenged instruction we shall consider is as follows:

"Accordingly, if the State has established to your satisfaction, beyond a reasonable doubt; (1) that Aritha Robinson on or about the 25th day of May, 1962, to on or about the 27th day of June 1962, was a woman engaged in prostitution and; (2) that the Defendant, Dee Dee Govan, on or about the 25th day of May, 1962 to on or about the 27th day of June, 1962, in Ward County, North Dakota, knowingly accepted or received in whole or in part, revenue from the proceeds or earnings of said Aritha Robinson, then it is your duty to find the Defendant guilty of the crime of Receiving the Proceeds of Prostitution." The trial judge defined prostitution as follows:

"Subsection 2 of Section 12–22–15 of the North Dakota Century Code defines 'prostitution' as follows: 'Prostitution shall include the offer or receiving of the body for sexual intercourse for hire, and the offer or receiving of the body for indiscriminate sexual intercourse without hire.'"

The statute under which the defendant was charged is as follows:

"Any person who knowingly shall accept or receive in whole or in part support or maintenance or revenue from the proceeds or earnings of any woman engaged in prostitution, is guilty of a felony * * *." (Sec. 12–22–22 NDCC)

 It is thus clear that the trial judge defined the crime charged, and the quantum of proof necessary to convict, substantially in the language of the statutes. Ordinarily a definition of a crime in the language of the statute is sufficient. 23A C.J.S. Criminal Law § 1194, page 496. It would have been so in this case had the jury also been instructed upon the nature and the elements of the defense. Except for a reference to the fact that defendant pleaded not guilty to the information, there is no mention in the instructions of the fact that a defense had been interposed. The defendant admitted that he had received money from the state's principal witness but he asserted he had received it for a legal consideration and without knowledge that it had been earned by prostitution. The jury was not told that this was a legal defense. Instead they were told that any person who receives revenue from the proceeds or earnings of a woman engaged in prostitution is guilty of a felony. The statute is at best ambiguous. Literally construed, and without adding to it by construction, it could be said that the statute makes it a felony to knowingly receive money from the earnings of a woman engaged in prostitution even if the money was paid for a legal consideration or was earned in a legitimate employment. In this connection we point out that under the definition of prostitution given by the trial judge to the jury, a woman in this state may be engaged in prostitution and still maintain an amateur status. Thus under the instructions, the jury could have found the defendant guilty even if they had believed his testimony.

In State v. Green, 70 N.D. 722, 724, 297 N.W. 783, 785, we construed this statute and said: "It is * * * the acceptance, without consideration, of a portion of the proceeds thus earned" which is made unlawful. Thus two of the essentials of the crime charged are that the money or thing of value received must have been earned in prostitution and that it must have been received without any legal consideration. The failure of the trial judge to include these essentials in his definition of the crime or to make any reference to the defense interposed when that defense admitted the receipt of money but asserted that it was received for a legal consideration and without knowledge that it had been earned in prostitution, was an omission which was calculated to mislead the jury and was prejudicial error. State v. Carter, 50 N.D. 270, 195 N.W. 567.

Since this error requires a reversal of this case, most of the other specifications of error may be disregarded. The challenge to the admission in evidence of "Exhibit 3" must be considered because the question of the admissibility of this exhibit will arise upon a retrial of the case.

"Exhibit 3" is an envelope containing one ten dollar bill and two five dollar bills which were found behind a picture in defendant's room when it was searched on the night the officers entered his home and arrested Aritha Robinson. The defense urges that the exhibit is incompetent because it was obtained by an unreasonable search and seizure. The prosecution states that the officers entered the home of the defendant legally under the authority of a "health order," that upon entering they discovered a crime being committed in their presence; that they immediately placed Aritha Robinson under arrest for the commission of the crime; that Aritha Robinson admitted her guilt and implicated the defendant and that the search of defendant's room thereafter was reasonable and legal. At the trial the exhibit was admitted over defendant's objection.

Consideration of the question presented requires us first to inquire into the effect of the "health order." Such an inquiry presents many difficulties. The "health order" is not in the record. For the most part it is simply referred to as "health order" although one witness testified, "We had an order to pick up Billie Robinson for a physical examination." We do not know who issued the order or upon what showing it was issued. We are not cited to any statute which authorizes such an order.

Section 23-07-07 NDCC provides:

"The state health officer, and each county and city health officer within his jurisdiction, when necessary for the protection of the public health, shall:

"1. Make examination of any person reasonably suspected of being infected with venereal disease and detain such person until the results of the examination are known;

"2. * * *

"3. * * *

"4. Co-operate with the proper officials whose duty it is to enforce laws directed against prostitution, and otherwise to use every proper means for the repression of prostitution."

Our search of the statutes, however, discloses no law setting forth the procedure to be followed in the exercise of the above duties unless it be Section 23-05-06 NDCC which provides:

"Whenever a local board of health deems it necessary for the preservation of the public health to enter any building within its jurisdiction to examine, destroy, remove, or prevent any nuisance, source of filth, or cause of sickness and is refused entrance into such building, any member of the board may make complaint under oath to a county justice within the jurisdiction of the board, stating the facts in the case so far as he has knowledge thereof. The justice thereupon shall issue a warrant directed to the sheriff or other peace officer commanding him to destroy, remove, or prevent, between the hours of sunrise and sunset, the nuisance, source of filth, or cause of sickness, under the direction of such members of the local board of health as accompany him."

This statute is of doubtful application here as it appears to relate only to buildings and their use and condition. However, we call attention to the fact that any warrant issued pursuant to this section must be executed in the daytime under the supervision of a health officer. We point out too that under the provisions of Section 29-06-08 NDCC an arrest for a misdemeanor can be made at night only upon the direction of the magistrate endorsed upon the warrant. Also Section 29-29-10 NDCC requires that a search warrant be served in the daytime unless the magistrate inserts a direction that it may be served at night.

Although it does not appear of record, we will assume, for the purposes of this opinion, that the "health order" directing the sheriff to take Aritha Robinson into custody for the purpose of a physical examination was issued upon proper authority. We can see no reasonable basis, however, for attempting to serve such an order at 2 o'clock a. m. Such an attempt was contrary to the expressed spirit of all of our statutory law relating to the service of process of this nature. The law enforcement officers had known of the presence of Aritha Robinson at the defendant's home for more than a month. Presumably the "health order" was issued at sometime during the regular office hours of county officers. If there was a sound basis for the "health order" it should have been served expeditiously to protect the public health. The record suggests that the "health order" was but a subterfuge to attempt to clothe with legality a "raid" in force upon defendant's home at two o'clock in the morning. This order could not be made the legal

basis for the beginning of a general search of defendant's home by eight police officers and an Assistant Attorney General at such an hour. Even where the officers have a valid warrant of arrest, the warrant may not be used as a pretext to search for evidence. United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877, 82 A.L.R. 775; McKnight v. United States, 87 U.S.App.D.C. 151, 183 F.2d 977; Go-Bart Importing Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374.

■ The fact that the officers may have discovered a misdemeanor being committed and that they made an arrest therefor after an unreasonable search of the premises had commenced, does not validate the continuation of the search after the arrest had been made.

■ While a peace officer may, without warrant, arrest for a misdemeanor committed in his presence and may enter a private dwelling or enclosure when he has knowledge, derived from the report of his senses, that a breach of the peace or misdemeanor is being committed therein, he may not in the absence of such knowledge enter such a place for the purpose of observing the occupants, in anticipation that an offense may be committed for which an arrest might be made. Adair v. Williams, 24 Ariz. 422, 210 P. 853, 26 A.L.R. 278.

■ As was stated in Re Phoenix Cereal Beverage Co., 58 F.2d 953, 956.

"The courts have made a distinction between public places where people may come and go freely and those to which neither the public nor the government agents have access. In the former case, the agents, being lawfully in, can arrest and seize for crimes being committed in their presence."

The judgment of the district court is reversed and a new trial granted.

MORRIS, C. J., and ERICKSTAD, STRUTZ and TEIGEN, JJ., concur.