**STATE of North Dakota, Plaintiff and Appellant,**

v.

**Michael PHELPS, Defendant and Appellee.**

Cr. No. 692.

Supreme Court of North Dakota.

Dec. 12, 1979.

Thomas M. Tuntland, State's Atty., Mandan, for plaintiff and appellant.

C. J. Schauss, Mandan, for defendant and appellee.

SAND, Justice.

Michael Phelps was arrested pursuant to a warrant and charged with burglary and arson, a violation of §§ 12.1–22–02 and 12.-1–21–01, North Dakota Century Code. Prior to trial, Phelps moved the district court to suppress evidence seized from him during a police detention prior to his arrest. The parties submitted briefs and an evidentiary hearing was held. The district court entered an order suppressing the evidence as unlawfully obtained and the State appealed the order to this court. We affirm.

During the evening of 10 May 1979, Michael Phelps was a customer in Ma's Place, a liquor establishment located in Mandan, North Dakota. At closing time, one o'clock a. m., 11 May 1979 Mavis Monahan, the owner of Ma's Place, requested Phelps to leave the premises. He refused, and then confessed to a previous burglary of another business owned by Monahan. Phelps inquired about the bar's burglar alarm and boasted to Monahan that he could break into any building in Mandan. Phelps finally left the bar at 1:30 a. m., but threatened to return and perpetrate destruction. He remained in the vicinity for some time thereafter, and pounded repeatedly on the bar door.

Monahan called the Mandan police at approximately 2:03 a. m. and two officers, Howard Moldenhauer and Richard Ladwig, started for Ma's Place. When they arrived, Phelps was no longer in the area. Monahan and her bartenders informed the officers of Phelps' conduct and his burglary confession and threat. After the officers heard the facts and checked out the area they returned to routine patrol.

Officer Moldenhauer knew that Phelps had been convicted of a previous burglary in Mandan, and that he had been found in possession of a shotgun which was stolen from a Mandan police car during another burglary. Moldenhauer also knew that Phelps was a suspect in several other burglaries.

At approximately 3:46 a. m., a burglar alarm was tripped at the Clinic building in Mandan. The Clinic building was located less than one block from Ma's Place. A police dispatcher immediately radioed the burglar alarm to the patrol officers then on duty. Officer Moldenhauer arrived at the Clinic building in his marked patrol car at 3:48 a. m. on 11 May 1979.

Moldenhauer radioed in that a fire was burning inside the Clinic building and then drove east down an alley which ran behind Ma's Place. As he came to an intersection of the alley, Officer Moldenhauer looked south and saw an individual running. The individual turned and saw the police car and then ran on. Moldenhauer recognized the individual as Michael Phelps and began pursuit. Phelps was found flattened up against a doorway, and Moldenhauer notified Officer Ladwig, who had by then arrived in another patrol car, to pick up Phelps. Phelps was taken into custody, but not placed under arrest.

Mandan police detective Dennis Bullinger was notified of the burglary and possible arson, and arrived at the Clinic building where he inspected the area and the point of forced entry into the building. Phelps was then transported to the Mandan police department, and was told repeatedly that he was not under arrest.

Bullinger attempted to interrogate Phelps, but Phelps refused to answer more than a few preliminary questions. Phelps also refused to voluntarily give up his clothes as evidence. Bullinger then informed Phelps that he would not be kept in custody and that he was not under arrest, but that he would not be permitted to leave until he gave up his clothing. Phelps still refused to give up his clothes.

Bullinger then forcibly removed Phelps' boots and scraped them for possible glass chips. Next, three Mandan police officers physically held Phelps down against his will and forcibly removed his shirt and trousers. It was then shortly after 4:30 a. m. 11 May 1979. Phelps was given a pair of coveralls and released. No search warrant was obtained by the police officers at any time.

Later that day, a probable cause hearing was held before the Morton County court of increased jurisdiction at which it was determined that probable cause existed to issue a complaint against Michael Phelps. Phelps was arrested pursuant to a warrant and charged with burglary and arson.

A preliminary hearing was held and Phelps was bound over for arraignment in the district court. At the arraignment, Phelps moved to suppress the clothing seized as evidence during the police detention of 11 May 1979. An evidentiary hearing was held on 26 June 1979, and the court concluded that, although there was probable cause to arrest Phelps, the police neglected or failed to make an arrest and failed to procure a search warrant for the purpose of the seizure of the clothing and boots. Phelps' motion to suppress those items of evidence was granted.

The State appealed to this court from the order suppressing the evidence.

■ The fourth and fourteenth amendments to the United States Constitution and Article I, § 18 of the North Dakota Constitution prohibit unreasonable searches and seizures. The guiding principle behind these prohibitions is to safeguard personal privacy and dignity against unwarranted intrusions by the State. *Schmerber v. Cali-*

*fornia,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *State v. Meadows,* 260 N.W.2d 328 (N.D.1977). To realize this principle, all evidence obtained in searches and seizures which transgress the commandments of the fourth amendment to the federal Constitution has been made inadmissible in state courts by the United States Supreme Court. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *State v. Iverson,* 219 N.W.2d 191 (N.D.1974); *State v. Matthews,* 216 N.W.2d 90 (N.D.1974). In the case before us, if the seizure of Phelps' clothing and boots by the Mandan police officers on 11 May 1979 violated the fourth amendment to the United States Constitution, that evidence is inadmissible at a subsequent trial against Phelps.

■ No search warrant was obtained by the police officers in this case at any time. Any search and seizure made without a valid search warrant is unreasonable unless it is shown to fall within one of the exceptions to the constitutional requirement that a search be made only upon valid search warrant supported by probable cause. *Stoner v. California,* 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); *State v. Matthews, supra; State v. Gagnon,* 207 N.W.2d 260 (N.D.1973). Therefore, if the Mandan police officers' search and seizure was not within an exception to the fourth amendment requirement, the trial court's suppression of the seized evidence was justified and proper.

■ One of the exceptions to the requirement of a search warrant is that a search may be made without a warrant incident to a lawful arrest. It is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *State v. Matthews, supra; State v. Gagnon, supra.*

■ There was no lawful arrest prior to the seizure of the evidence in this case. Phelps was taken into custody by the Man-

dan police at approximately 3:50 a. m. on 11 May 1979 and detained for about 40 minutes. During that period of detention Phelps was told several times that he was not under arrest, and at one point Detective Bullinger told Phelps that he was not going to be kept in custody, was not under arrest, but he was not going to be released until he gave up his clothing. Thus, despite the presence of attendant conditions constituting probable cause and grounds for a lawful arrest pursuant to Ch. 29–06, North Dakota Century Code, at the time of Phelps' detention and the seizure of his clothing, he was not placed under arrest at that time. The *Chimel* exception to the warrant requirement was not applicable here because the seizure was not incident to a valid arrest.

In *Cupp v. Murphy* 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973), the United States Supreme Court applied the principles of *Chimel* to design another distinct exception to the warrant requirement. The defendant in *Cupp,* upon learning of the strangulation of his wife, voluntarily went to the police station for questioning, but was not arrested. At the station, the police noticed a dark spot on his finger, and suspecting it might be dried blood, asked if they could take a sample of scrapings from his fingernails. He refused, placed his hands behind his back, and appeared to rub them together. He then put his hands in his pockets, and a metallic sound, such as keys rattling, was heard. The police took the fingernail scrapings over his protest and without a warrant. The *Cupp* court discussed *Chimel* and concluded:

> "On the facts of this case, considering the existence of probable cause, the very limited intrusion undertaken incident to the station house detention, and the ready destructibility of the evidence, we cannot say that this search violated the Fourth and Fourteenth Amendments." 412 U.S. at 296, 93 S.Ct. at 2004, 36 L.Ed.2d at 906.

The *Cupp* decision was discussed at length in *Franklin v. State,* 18 Md.App. 651, 308 A.2d 752 (1973), where Judge Moylan labeled the *Cupp* warrant exception to be "search incident to a detention, based upon probable cause but not amounting to arrest, for readily destructible evidence." 308 A.2d at 761. The *Franklin* court, after concluding that the search warrant was valid, analogized the *Cupp* fingernail scrapings and volunteered that under *Cupp,* even though a rape suspect was not under a formal arrest during a police detention, the police were entitled to seize the suspect's undershorts which may have contained evidence of a "highly evanescent" nature such as seminal stains, blood stains, or head, body, or pubic hairs, where the search was incident to a probable cause detention on suspicion of the crime in question. 308 A.2d at 363.

■ In the case at bar, the State asserted that the principles of *Cupp* directed that the clothing and boots seized from Phelps without a warrant were admissible into evidence. We interpret *Cupp* to prescribe the presence of three conditions before evidence seized without a warrant and not incident to a lawful arrest will escape the exclusionary rule: (1) the existence of probable cause, (2) a very limited intrusion by the State, and (3) ready destructibility of the evidence.

■ Probable cause exists when the facts and circumstances within a police officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a man of reasonable caution in believing that an offense has been or is being committed. *State v. Page,* 277 N.W.2d 112 (N.D.1979); *State v. Kolb,* 239 N.W.2d 815 (N.D.1976); *Witte v. Hjelle,* 234 N.W.2d 16 (N.D.1975). Here, at the time Phelps was detained at the police station, the police knew that a burglary and possible arson were committed at the Clinic building. The police also knew that Phelps had a prior burglary conviction and that he had threatened to burglarize Ma's Place earlier that very morning. Further, Officer Moldenhauer had observed Phelps running from near the scene of the burglary only five minutes after the alarm was tripped. We believe that these circumstances gave the police probable cause to arrest Phelps at the time he was detained and the evidence seized.

The second condition of the *Cupp* exception was that the intrusion by the State be "very limited." We believe that there are characteristic differences between the *Cupp* fingernail scrapings and the seizure of Phelps' garments in this case. *Cupp* carefully pointed out that even a probable cause detention did not justify a full "search incident to arrest" of the person detained. The court said:

> "Accordingly, we do not hold that a full *Chimel* search would have been justified in this case without a formal arrest and without a warrant. But the respondent was not subject to such a search." 412 U.S. at 296, 93 S.Ct. at 2004, 36 L.Ed. at 906.

■ We think probable cause existed and Phelps could have been arrested, and as a result he would have been subject to a *Chimel* search in this instance, but this was not the situation. When Phelps refused to voluntarily turn over his clothing to the Mandan police, Detective Bullinger forcibly removed Phelps' boots and scraped them for glass fragments. Three police officers then physically held Phelps down against his will and forcibly removed his shirt and trousers. These actions transcended even the most liberal construction of a "very limited" intrusion and invaded the shield of personal security that our constitution was designed to protect. The police conduct in this case was unreasonable.

■ The final condition of the *Cupp* warrant exception was that the evidence seized be readily destructible. In *Cupp,* had the police not scraped the suspect's fingernails when they did, he could easily have destroyed the evidence even in the officer's presence. In fact, after the suspect refused to consent to the taking of fingernail samples, he began to rub his hands together in an assumed attempt to ruin the evidence.

Here, however, there was no immediate threat that the evidence on Phelps would be disposed of or otherwise destroyed. Certainly, some evidence, especially the glass fragments thought to be wedged in Phelps' boots,[1] was by its nature susceptible to destruction or loss. Nevertheless, Phelps was being held in guard by at least three police officers in the Mandan police department station house. Phelps was making no effort to destroy the evidence at that time, and in the event of such an attempt, the three officers would have had no difficulty in restraining him until a lawful arrest was made or a search warrant obtained. We are convinced that at the time Phelps' boots and clothing were seized at the Mandan police station, there was no immediate danger that that evidence would be "readily destroyed."

Finally, the State maintained that instead of arresting and detaining Phelps indefinitely, the police followed the more reasonable path of detaining Phelps long enough to secure the evidence, and then releasing him until that evidence was analyzed,[2] and, if need be, arresting the individual later. While this choice may have seemed reasonable to the policemen at the time of their actions, the inescapable fact remains that the seizure of Phelps' boots and clothing took place without either a lawful arrest or a search warrant or a *Cupp* exception. The warrant or lawful arrest requirements of the North Dakota and United States Constitutions are among the fundamental guardians of our personal liberties, and these constitutional guarantees cannot be eroded by good intentioned law enforcement personnel acting under what

1. The evidence which could have been taken from Phelps' boots did not have the probative value of Cupp's finger scrapings or samples. The evidence from Phelps would have merely placed him in the vicinity, which they already knew. But be that as it may, all the officers had to do to make the search valid was to arrest Phelps.

2. The State volunteered at oral argument that the Morton County State's Attorney's office instructed Mandan police officers not to formally arrest suspects if at all possible, but rather to detain them for questioning and then release them pending further investigation. This case exemplifies the constitutional ramifications of such a policy, especially in light of the fact that a police detention based upon probable cause is actually an arrest without the requisite formalities.

might be termed well meaning but not good advice.

Affirmed.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.