1999 ND 1

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Curtis V. HERRICK, Defendant and Appellant.**

Criminal Nos. 980082–84.

Supreme Court of North Dakota.

Jan. 6, 1999.

Frederick R. Fremgen, Assistant State's Attorney, Jamestown, ND, for plaintiff and appellee.

Robin L. Olson of Olson Law Office, Grand Forks, ND, for defendant and appellant.

NEUMANN, Justice.

[¶ 1] Curtis Herrick appeals the trial court's judgment reinstating his criminal convictions on remand. We affirm, holding the exclusionary remedy allows law enforcement officers who acted in good faith on a no-knock search warrant issued on a per se basis, prior to *State v. Herrick*, 1997 ND 155, 567 N.W.2d 336 [*Herrick I*], under N.D.C.C. § 19–03.1–32(3) to validly execute the warrant.

I

[¶ 2] On February 27, 1995, Officer LeRoy Gross of the Stutsman County Drug Task Force searched garbage in the alley behind Herrick's home. Gross found a paper clip with marijuana residue, a sterile marijuana seed, and a marijuana stem.

[¶ 3] On January 2, 1996, Officer Gross and Officer Corinne Becker, also with the task force, again searched garbage behind Herrick's home. The officers found additional marijuana stems and seeds, two bent metal wires with marijuana residue, a torn check with Herrick's name on it, and handwritten notes from a book on how to grow marijuana.

[¶ 4] Becker sought a warrant to search Herrick's home, relying on the information obtained from the garbage searches. The judge issued a no-knock warrant and a search of Herrick's home was conducted on January 2, 1996. In the home, the officers found marijuana, marijuana seeds and stems, equipment for indoor horticulture, and a book on growing marijuana indoors. The officers charged Herrick with possession of controlled drugs, possession of drugs with intent to manufacture, and possession of drug paraphernalia.

[¶ 5] Herrick moved to suppress the evidence. He argued the issuance and execution of the no-knock warrant violated his state and federal constitutional rights against unreasonable searches and seizures. The trial court denied his motion to suppress. Herrick pled guilty, under Rule 11(a)(2), N.D.R.Crim.P., conditionally preserving the denial of suppression for appellate review. Herrick appealed his convictions.

[¶ 6] We provisionally reversed the order denying suppression. *Herrick I*, at ¶ 28. We determined there was probable cause for a search and the issuing judge was neutral and detached. *Id.* at ¶¶ 11, 15. We held, however, N.D.C.C. § 19–03.1–32(3) required probable cause for a no-knock entry, and a per se rule of the presence of drugs justifying the issuance of a no-knock warrant was unconstitutional. *Id.* at ¶ 21. We remanded for the trial court to consider whether a good-faith exception to the exclusionary remedy should apply. *Herrick I*, at ¶ 27. In the event of appeal after remand, we asked the parties to "brief the question of whether we should recognize a good-faith exception and, if so, whether it should be applied in this case." *Id.* at ¶ 27.

[¶ 7] On remand and after further hearing, the trial court did not exclude the illegally obtained evidence. The court applied the good-faith exception to the exclusionary rule formulated by the United States Supreme Court in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The trial court reasoned:

It is significant to note that the invitation to address the good faith issue came in the same opinion in which the North Dakota Supreme Court was forced to abandon it[ ]s per se no-knock rule as result of *Richards* [*v. Wisconsin*, 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997)]. Because this case was remanded back to this court to determine whether or not the good faith exception should be adopted, the discussion of the good faith exception in the previous cases and the fact that the U.S. Supreme Court adopted the good-faith exception thirteen years ago [in *Leon*], it appears the North Dakota Supreme Court will adopt the good faith exception.

. . . .

Officer Becker acted in good faith when she obtained and executed the search warrant because at the time it was authorized and executed it was legal in North Dakota to issue no-knock search warrants in all cases w[h]ere drugs are involved. The

affidavit presented by Officer Becker to Judge Wright included evidence of drugs and drug paraphernalia. *State v. Herrick,* 567 N.W.2d at 340. This was sufficient under the per se rule in effect at this time for Judge Wright to issue the no-knock search warrant. The affidavit was not so lacking in indicia of probable cause to render official belief in its existence entirely unreasonable. None of the other *Leon* factors rendering the good faith exception not applicable would apply in this case. There is no indication that the magistrate was misled or abandoned his judicial role, nor is there evidence to indicate that the warrant was facially deficient. The good faith exception to the exclusionary rule applies to the facts in this case.

The trial court reinstated Herrick's convictions, and Herrick appealed.

## II

**■** [¶ 8] The North Dakota Legislative Assembly has provided greater protections in the no-knock forum than the Fourth Amendment. Section 19–03.1–32(3), N.D.C.C., requires a law enforcement officer have *probable cause* in suspecting evidence may be destroyed or that the officer may be in danger if he or she knocks and announces their presence before entering in order to justify a no-knock warrant. *Herrick I,* at ¶ 21 (emphasis added).

[¶ 9] In *Wilson v. Arkansas,* 514 U.S. 927, 936, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995), the Supreme Court held the common-law knock and announce rule formed a part of the Fourth Amendment reasonableness inquiry. Subsequently, in *Richards v. Wisconsin,* 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997), the Supreme Court found the Fourth Amendment does not permit a blanket exception to the knock and announce rule in drug cases, rather the Fourth Amendment requires a *reasonable suspicion* by the law enforcement officer that knocking and announcing would be dangerous or futile. *Id.,* at 1421 (emphasis added).

**■** [¶ 10] In light of the recent Supreme Court cases concerning the knock and announce rule and no-knock warrants it cannot be disputed N.D.C.C. § 19–03.1–32(3), while

providing greater protections than announced in those cases, implicates a substantial right under the Fourth Amendment. The Legislative Assembly when enacting N.D.C.C. § 19–03.1–32(3) did not specify any remedy for violations of the statute. In this instance, when a violation of N.D.C.C. § 19–03.1–32(3) is so closely associated with Fourth Amendment and Article I, Section 8, rights, it is appropriate, and arguably necessary for us to consider similar remedies for this statutory violation as granted for constitutional violations. *See Wayne R. Lafave, Search & Seizure* § 1.5(b), 132–36 (1996).

[¶ 11] Professor Lafave notes if there is no pertinent legislative history, as is the case with N.D.C.C. § 19–03.1–32(3), then it is appropriate to use suppression as a remedy when the statute "concerns the quality of evidence needed for issuance of the warrant ... without concern for whether the rule or statute exceeds the requirements of the Fourth Amendment." *Id.* at 136.

[¶ 12] If the exclusionary remedy is what we must look to when a statute implicating substantive constitutional rights is violated, and the source of the exclusionary remedy in this state is the Fourth Amendment, then we must also consider the application of the good-faith exception delineated in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). *See State v. Manning,* 134 N.W.2d 91, 98 (N.D.1965) (holding the state rule of allowing illegally obtained evidence at trial has been overruled by *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)).

[¶ 13] Responding to our request in *Herrick I,* both parties submitted well-developed arguments and briefs on the reasons for and against applying a good-faith exception to the exclusionary remedy in this case. The landmark precedent first recognizing a good-faith exception to the federal exclusionary rule was *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). *Leon* also carved out four categories when good faith does not override the exclusionary remedy. *Id.* at 923, 104 S.Ct. 3405.

[¶ 14] In *Leon,* the trial court suppressed evidence of drugs found with a facially valid

warrant issued without probable cause. *Id.* at 903, 104 S.Ct. 3405. The court of appeals refused to apply a good-faith exception and affirmed suppression. *Id.* at 905, 104 S.Ct. 3405. In his concurrence, Justice Blackmun aptly summarized the holding of the six-member majority:

> [E]vidence obtained in violation of the Fourth Amendment by officers acting in objectively reasonable reliance on a search warrant issued by a neutral and detached magistrate need not be excluded, as a matter of federal law, from the case in chief of federal and state criminal prosecutions.

*Id.* at 927, 104 S.Ct. 3405. Thus, the good-faith exception became federal doctrine.

[¶ 15] The *Leon* Court reasoned that "marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *Id.* at 922, 104 S.Ct. 3405. As noted, an officer's reliance on the particular probable cause for the warrant must be objectively reasonable. *Id.* "Accordingly, our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 922 n. 23, 104 S.Ct. 3405. *Leon* identified four situations when police reliance on a warrant cannot be objectively reasonable: (1) when the issuing magistrate was misled by false information intentionally or negligently given by the affiant; (2) when the magistrate totally abandoned her judicial role and failed to act in a neutral and detached manner; (3) when the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) when a reasonable law enforcement officer could not rely on a facially deficient warrant. *Id.* at 923, 104 S.Ct. 3405.

[¶ 16] Herrick argues the affidavit and application for the noknock warrant in this case were so lacking in indicia of probable cause and specificity that a reasonable person could not believe the warrant was valid. His argument is based on the third exception to the good-faith rule announced

by the Supreme Court in *Leon. Id.* We disagree with Herrick's argument.

[¶ 17] In 1973, in *State v. Loucks,* 209 N.W.2d 772 (N.D.1973), this Court determined an affidavit which did not contain any affirmative statement that giving notice would result in destruction of evidence was valid under N.D.C.C. § 19–03.1–32(3). We held, "[t]he court may take judicial notice of matters of common knowledge and science as may be known to all men of ordinary understanding and intelligence. It is common knowledge that drugs may be easily disposed of." *Id.* at 777–78 (citations omitted). In 1992, in *State v. Knudson,* 499 N.W.2d 872 (N.D.1993), this Court again discussed drugs and no-knock warrants stating, "[a] no-knock warrant in drug cases is available under this statute, because we have taken judicial notice that those in possession of controlled substances ordinarily are on the alert to destroy the typically easily disposable evidence quickly at the first sign of a law enforcement officer's presence." *Id.* at 876.

[¶ 18] As we noted in *Herrick I,* these cases effectively constituted a per se rule in North Dakota that the suspected presence of drugs justified a no-knock warrant under N.D.C.C. § 19–03.1–32(3). *Herrick I,* at ¶ 21. Under these prior cases, law enforcement officers would have no reason to doubt the validity of a no-knock warrant issued in a drug case by a magistrate or judge.

[¶ 19] Arnie Rummel, Special Agent of the Bureau of Criminal Investigation, was the officer in charge of the task force in Stutsman County. Rummel testified at the remand hearing that he understood the standard for obtaining a no-knock warrant was if the officer suspected drugs were on the premises. Rummel also stated the reasoning behind the thirty-one no-knock warrants the task force had previously obtained was a belief drugs were present. Furthermore, in this case, Officer Becker also testified she was not aware anything more than the presence of marijuana was required to get the no-knock warrant she had obtained from the judge.

[¶ 20] Contrary to Herrick's assertion, the officers here had indicia of probable cause

with which to seek a no-knock search warrant, indicia supplied by *Loucks* and *Knudson*. Law enforcement in North Dakota generally, and specifically in this case, operated under the belief that if drugs were present a no-knock warrant was justifiably obtainable. This belief was directly traceable to our prior rulings in cases like *Loucks* and *Knudson* in which we took judicial notice under N.D.C.C. § 19–03.1–32(3) that drugs were easily disposed of. Therefore, under federal precedent, the good-faith exception to the exclusionary rule would in fact apply to a no-knock warrant issued on a per se basis by a judge or magistrate under N.D.C.C. § 19–03.1–32(3). *See United States v. Moore*, 956 F.2d 843, 851 (8th Cir.1992) (finding the good-faith exception applied in a federal prosecution in which a Nebraska judge issued a no-knock warrant under a blanket rule permitting no-knocks in all drug cases). We find the officers acted in objective reasonable reliance on the no-knock warrant issued by the judge.

[¶ 21] Herrick also argues the North Dakota Constitution recognizes greater protections than the federal constitution, and therefore the good-faith exception does not apply to a search warrant issued under state law.

[¶ 22] It is axiomatic our state constitution may provide greater protections than its federal counterpart. *State v. Ringquist*, 433 N.W.2d 207, 212 (N.D.1988); *State v. Matthews*, 216 N.W.2d 90, 99 (N.D. 1974). However, the constitution must be interpreted in light of the rights and liberties it was created to uphold, and not the philosophical viewpoints of the judiciary who hold the responsibility of interpretation. *See Ringquist*, 433 N.W.2d at 217 (VandeWalle, J., concurring specially).

[¶ 23] Article I, Section 8 of the North Dakota Constitution is almost identical to the Fourth Amendment. Article I, Section 8, provides:

The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized.[1]

[¶ 24] The sources of the declaration of the right to be free of unreasonable searches and seizures in Article I, Section 8 have been identified as "Penna., I, and Constitutions generally." Herbert L. Meschke and Lawrence D. Spears, *Digging for Roots: The North Dakota Constitution and the Thayer Correspondence*, 65 N.D. L.Rev. 343, 379 n. 251, 481 (1989). As Meschke and Spears explained: "[I]t is important to look for guidance in similar provisions in other state constitutions and in their constructions, particularly when the constitutional provisions are linked historically." *Meschke & Spears*, at 381.

[¶ 25] The Supreme Court of Pennsylvania held in *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887, 905–06 (Pa.1991), under their Article I, Section 8 (nearly identical and numbered the same as our provision), there is no good-faith exception to the exclusionary remedy for an unconstitutional search. However, the independent history of Pennsylvania's declared right to be free from unreasonable searches and seizures was an important factor in the *Edmunds* reasoning. *See Id.* 586 A.2d at 897–98 (recognizing numerous Pennsylvania cases in which the courts explicitly state Article I, Section 8, is "tied into the implicit right to privacy in this Commonwealth"). The Pennsylvania Supreme Court asserts this is clear evidence that Pennsylvania has always viewed Article I, Section 8 as providing more protection than the Fourth Amendment, and therefore, adoption of *Leon* would be repugnant to their constitution. *Id.* at 899.

[¶ 26] North Dakota precedent does not contain such clear guidance. While we cer-

---

1. The Fourth Amendment of the United States Constitution provides:

    The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, *and* particularly describing the place to be searched and the persons and things to be seized. (Emphasis added.)

    This language is identical to Article I, Section 8 except for the conjunction "and."

tainly recognize privacy as an important right under Article I, Section 8, *see, e.g., State v. Sakellson,* 379 N.W.2d 779 (N.D. 1985), we have not unequivocally distinguished privacy as the major factor in applying the exclusionary rule to Article I, Section 8. *See, e.g., State v. Wahl,* 450 N.W.2d 710, 714 (N.D.1990) (citing *Leon* for the proposition that the exclusionary rule acts to deter police misconduct and to bolster judicial integrity by not allowing convictions based on unconstitutionally obtained evidence). *But see State v. Phelps,* 286 N.W.2d 472, 475 (N.D.1979) (stating the Fourth Amendment is intended to operate as a safeguard for personal privacy and dignity by preventing against unwarranted intrusions by the State, and the exclusionary remedy furthers that intention). However, notwithstanding the differences between North Dakota and Pennsylvania constitutional histories we need not decide today the question of whether North Dakota's Constitution may indeed provide greater protections than the United States Constitution. The issue before us in this case is a violation of a statute, N.D.C.C. § 19–03.1–32(3), and not a violation of Article I, Section 8.

[¶ 27] Today, this Court has found only that a violation of N.D.C.C. § 19–03.1–32(3), based on a no-knock warrant issued on a per se basis prior to *Herrick I* is subject to the good-faith exception as outlined in *Leon.* While noting the historical common law of North Dakota and the differing constitutional relationship to Pennsylvania, we do not decide if in fact North Dakota does provide greater state constitutional protections than the Fourth Amendment, and if so, whether such heightened protection would preclude a good-faith exception to North Dakota's exclusionary rule.

### III

[¶ 28] We hold when, prior to our decision in *State v. Herrick,* 1997 ND 155, 567 N.W.2d 336, a no-knock search warrant was issued on a per se basis under N.D.C.C. § 19.1–03.1–32(3) because drugs were alleged to be present in the place to be searched, the good-faith exception to the exclusionary rule ap-

plies. The judgment of the trial court is affirmed.

[¶ 29] VANDE WALLE, C.J., and SANDSTROM, J., concur.

[¶ 30] The Honorable Herbert L. Meschke, a member of the Court when this case was heard, resigned effective October 1, 1998, and did not participate in this decision.

[¶ 31] The Honorable Carol Ronning Kapsner was not a member of the Court when this case was heard and did not participate in this decision.

SANDSTROM, Justice, concurring.

[¶ 32] I agree with the opinion of the Court. I write separately to note that the concurring and dissenting opinion here parallels the dissent in *State v. Jacobson,* 545 N.W.2d 152, 156 (N.D.1996) (Levine, S.J., dissenting). For reasons similar to those in my concurrence in *Jacobson* at 155, I disagree with the concurring and dissenting opinion.

[¶ 33] "The framers of North Dakota's Constitution must have intended more protection under the North Dakota Constitution's unreasonable searches and seizures clause than that of the Fourth Amendment to the United States Constitution, because otherwise the state provision is a meaningless redundancy." So goes the argument. What the argument lacks is historical perspective.

[¶ 34] From its adoption, the Fourth Amendment of the United States Constitution was considered a limitation only on the federal government. It was not until *1961* that the United States Supreme Court, in *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), extended "the Fourth Amendment rights to be free from unreasonable searches and seizures and to have excluded from criminal trials any evidence illegally seized" to the states. *Duncan v. Louisiana,* 391 U.S. 145, 148 and n. 6, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).

[¶ 35] When the framers of North Dakota's Constitution included an unreasonable searches and seizures clause, they were prohibiting the state from doing what the federal government was prohibited from doing.

In view of then current federal constitutional jurisprudence, our framers were providing a real protection that would otherwise have been lacking.

[¶ 36] A review of the entire proceedings of our State Constitutional Convention offers not one word of support for the concept that the framers intended to do anything other than prohibit the state from doing what the federal government was prohibited from doing. Official Report of the Proceedings and Debates of the First Constitutional Convention of North Dakota (1889); Journal of the Constitutional Convention for North Dakota (1889).

[¶ 37] The concurring and dissenting opinion refers us to Meschke and Spears, *Digging for Roots: The North Dakota Constitution and the Thayer Correspondence*, 65 N.D.L.Rev. 343 (1989), and *Model Constitution (Peddrick Draft # 2, 1889)*, 65 N.D.L.Rev. 415 (1989). The "Authorities" section of the Peddrick Draft # 2 reflects the origin of the unreasonable searches and seizures provision was "Penna., I, and Constitutions generally." 65 N.D.L.Rev. at 481. There is nothing in our constitutional records or the jurisprudence of the time to support the concurring and dissenting opinion's imputation of an exclusionary rule, let alone an exclusionary rule without a good faith exception, as the intent of our Constitutional Convention. Although Pennsylvania's, in addition to *constitutions generally*, may have been a source secret drafters looked to, there is nothing to support the idea our Constitutional Convention knew it. If the delegates had looked to Pennsylvania law, they would have found no "exclusionary rule without any good faith exception" enunciated there. The Pennsylvania Supreme Court first "discovered" this principal over one hundred years after our North Dakota Constitution was adopted. *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887, 889 (Pa.1991). Certainly our drafters cannot fairly or reasonably be said to have intended an undiscovered interpretation, of one undisclosed source, used by secret drafters.

[¶ 38] Dale V. Sandstrom

MARING, Justice, concurring in part and dissenting in part.

[¶ 39] I concur in the part of the majority opinion that concludes N.D.C.C. § 19–03.1–32(3) requires a higher standard for issuance of a no-knock warrant than the Fourth Amendment requires. N.D.C.C. § 19–03.1–32(3) requires "probable cause" to believe the evidence would be disposed of or the officer's safety would be endangered, whereas the United States Supreme Court has concluded the Fourth Amendment requires a "reasonable suspicion" that knocking and announcing would result in destruction of evidence or placing the officer in danger. *Richards v. Wisconsin*, 520 U.S. 385, 117 S.Ct. 1416, 1421, 137 L.Ed.2d 615 (1997). I also agree a legislature can afford greater protections than the United States Constitution, which our legislature has clearly done by this statute. I am of the opinion N.D.C.C. § 19–03.1–32(3) implicates a constitutional right, the right to be free from unreasonable searches and seizures guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution and Article I, Section 8, of the North Dakota Constitution. At ¶ 12 the majority relies on Professor LaFave to reach the conclusion that suppression is an appropriate remedy for the violation of a statute when it "concerns the quality of evidence needed for issuance of the warrant." (Citing Wayne R. LaFave, *Search and Seizure* § 1.5(b), at 136 (3rd ed.1996)). Professor LaFave, however, notes: "But even in this latter area, it sometimes happens that a court disenchanted with the exclusionary rule will decline to apply it with respect to such violations." LaFave, *supra* § 1.5(b), at 136. Nevertheless, our Court has concluded suppression of seized evidence is an appropriate remedy for a violation of N.D.C.C. § 29–29–08 which generally authorizes the execution of search warrants. *See State v. Sakellson*, 379 N.W.2d 779, 784–85 (N.D.1985). In *Sakellson*, our Court stated "[t]he rule of announcement is more than a statutory requirement. It is a constitutional imperative implicit in the fourth amendment prohibition against unreasonable searches and seizures." *Id.* at 784 (citation omitted). Consequently, our Court concluded the officer's violation of

N.D.C.C. § 29–29–08 was also a violation of both Article I, Section 8, of the North Dakota Constitution and the Fourth and Fourteenth Amendments to the United States Constitution "thereby necessitating the suppression of the evidence obtained." *Id.*

[¶ 40] I, therefore, agree the application of the exclusionary rule as a remedy for the violation of N.D.C.C. § 19–03.1–32 is proper, because the violation is one which implicates a basic constitutional right against unreasonable searches and seizures.

[¶ 41] The majority next reaches the issue of whether we should adopt a good faith exception to the exclusionary rule remedy we have adopted for a violation of N.D.C.C. § 19–03.1–32. The majority reasons that because the exclusionary rule in our state has its genesis from federal constitutional doctrine we "must" follow *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) and adopt a good faith exception. The majority then proceeds to determine the good faith exception applies in this case and concludes at ¶ 21 the "officers acted in objective reasonable reliance on the no-knock warrant." It seems rather ironic that we have interpreted a statute, which actually provides greater protection to our citizens from no-knock warrants than the federal constitution, in a way that arguably weakens this protection. Therefore, by applying federal constitutional doctrine alone, the majority affirms the trial court's decision to adopt and apply a good faith exception.

[¶ 42] It is at this point in the decision I can no longer agree with the majority opinion. It concludes at ¶ 27, notwithstanding the argument by Herrick that the North Dakota Constitution recognizes greater protections than the federal constitution, the court "need not decide today" the question of whether the North Dakota Constitution provides greater protections than the federal constitution. I disagree that our inquiry stops here.

[¶ 43] In *Herrick I,* this court remanded the case to the trial court for "consideration of whether or not a good faith exception to the exclusionary rule should be applied." *State v. Herrick,* 1997 ND 155, ¶ 27, 567 N.W.2d 336. We noted Herrick argued "the no-knock warrant violated his right against unlawful search and seizure because it was not reasonable to issue a no-knock warrant under the circumstances." *Id.* at ¶ 16. We discussed that the Fourth Amendment and Article I, Section 8, of the North Dakota Constitution require all searches and seizures be reasonable and that the rule of announcement is implicit in this requirement. *Id.* at ¶ 17. Clearly we remanded because of the constitutional issues. If the issue was only one of statutory interpretation, there would be no need to remand to the trial court.

[¶ 44] The issue having been squarely raised by the defendant in this case, I believe it is our duty to independently interpret our state constitution. In *State ex rel. Linde v. Robinson,* 35 N.D. 417, 160 N.W. 514, 516 (1916), our Court utilized a text-based method of constitutional interpretation. Under this method, intent and purpose are to be deduced from the text first and only if ambiguity exists do we delve into factors that demonstrate the objective of the language and the intention of the drafters and adopters. *Id.* Article I, Section 8 of the North Dakota Constitution is "inherently ambiguous." *See* Lynn Boughey, *An Introduction to North Dakota Constitutional Law: Contents and Methods of Interpretation,* 63 N.D. L.Rev. 157, 219 n. 502 (1987). According to our Court in *Robinson,* we look to the object to be accomplished; the prior state of the law; and the contemporaneous and practical constructions when construing ambiguous language. 160 N.W. at 516.

[¶ 45] In examining the object to be accomplished, we look to the "intent of the 'constitution maker,' the intent of the members of the constitutional convention, the intent of the people adopting the constitutional provision, and the purpose and spirit of the provisions being construed." Boughey, *supra* at 218. Early North Dakota history reveals the power and influence of the railroads in North Dakota. *Id.* at 242–43. It has been suggested the people of Dakota Territory wanted to assert their independent rights as against control from outside interests. *Id.* The history of our state constitution shows that the framers and the people of North Dakota

intended to grant an array of basic individual rights broader than that guaranteed by the federal constitution. *Id.* at 253–59. The Declaration of Rights occupies the position of the first article in the North Dakota Constitution. Unfortunately, the constitutional convention's journal and official report do not provide any assistance in specifically construing the search and seizure provision.

[¶ 46] It can be established, however, that the North Dakota Constitutional framers did not use the federal constitution as a model in formulating our state constitution. *See* Honorable Robert Vogel, *Sources of the 1889 North Dakota Constitution,* 65 N.D. L.Rev. 331, 332, 342 (1989). The sources of the declaration of the right to be free of unreasonable searches and seizures in Article I, Section 8, have been identified as "Penna., I, and Constitutions generally." Honorable Herbert L. Meschke & Lawrence D. Spears, *Digging for Roots: the North Dakota Constitution and the Thayer Correspondence,* 65 N.D. L.Rev. 343, 379 n. 251, 481 (1989) (exploring the history of the "Williams Constitution").

[¶ 47] The origin of Article I, Section 8 of our state constitution is clearly linked to the Pennsylvania Constitution, Article 1, Section 8. In the interpretation of our state constitution it is important to look for guidance in the construction of a like constitutional provision upon which our constitutional provision is based and historically linked. Meschke & Spears, *supra* at 381.

[¶ 48] The Pennsylvania Supreme Court construed Article 1, Section 8 of its state constitution in *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887, 889 (Pa.1991) to reject adoption of the good faith exception to the exclusionary rule. The text of Article 1, Section 8 of the Pennsylvania Constitution is similar in language to Article I, Section 8 of the North Dakota Constitution and the Fourth Amendment to the United States Constitution. *Edmunds,* 586 A.2d at 895. Pennsylvania's Constitution, however, was "adopted on September 28, 1776, a full ten years prior to the ratification of the U.S. Constitution." *Id.* at 896. Pennsylvania's constitution was revised in 1790 and the search and seizure provision was reworded.

*Id.* at 897 In *Edmunds,* the Pennsylvania Supreme Court carefully and thoughtfully examined and construed Article 1, Section 8 of its state constitution to determine whether a good faith exception to the exclusionary rule applies.

[¶ 49] First, it noted although the text of its search and seizure provision is similar to the Fourth Amendment to the United States Constitution, it is "not bound to interpret the two provisions as if they were mirror images[.]" *Id.* at 896. Similarity of language between federal and state constitutions may show a similarity of purpose, but it does not follow that a state court interpreting a state constitutional provision cannot do so independently from the federal courts' interpretation of the federal constitution. *See State v. Jacobson,* 545 N.W.2d 152, 157 (N.D.1996) (Levine, J., dissenting). As one scholar observed: " 'different men may employ identical language yet intend vastly different meanings and consequences.' " *The Interpretation of State Constitutional Rights,* 95 Harv. L.Rev., 1324, 1497 n. 12 (1982) (quoting Jerome Falk, *The Supreme Court of California, 1971–1972: Foreword—the State Constitution: A More Than "Adequate" Nonfederal Ground,* 61 Cal. L.Rev. 273, 282 (1973)).

[¶ 50] The *Edmunds* court also pointed out that "[l]ike many of its sister states, Pennsylvania did not adopt an exclusionary rule until the United States Supreme Court's decision in *Mapp* required it to do so." 586 A.2d at 897. North Dakota likewise applied the exclusionary remedy only after the Supreme Court's decision in *Mapp* held the Fourth Amendment's exclusionary remedy was applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *see; State v. Manning,* 134 N.W.2d 91, 98–99 (N.D.1965) (citing *State v. Govan,* 123 N.W.2d 110, 115 (N.D.1963), as "clearly indicating that it would follow the *Mapp* decision if and when the question were raised in this court"). The court noted that at the time Pennsylvania embraced the exclusionary rule, it was viewed as an essential part of both the Fourth and Fourteenth Amendments, i.e., a

"constitutional mandate," and its purpose included protection of individual privacy rights, deference of unlawful police conduct and preservation of institutional integrity. *Edmunds*, 586 A.2d at 897–98. The court cited a history of case law interpreting its search and seizure provision in its state's constitution as "unshakably linked to a right of privacy[.]" *Id.* at 898.

[¶ 51] Our Court has stated "[t]he North Dakota Constitution may afford broader individual rights than those granted under the United States Constitution." *State v. Rydberg*, 519 N.W.2d 306, 310 (N.D.1994); *see also State v. Nordquist*, 309 N.W.2d 109, 113 (N.D.1981); *State v. Stockert*, 245 N.W.2d 266, 271 (N.D.1976); *State v. Matthews*, 216 N.W.2d 90, 99 (N.D.1974). Our Court has also found greater individual rights under our state constitution. *See Grand Forks–Traill Water Users v. Hjelle*, 413 N.W.2d 344 (N.D.1987) [protection from takings for public use]; *State v. Orr*, 375 N.W.2d 171 (N.D. 1985) [right to counsel]; *City of Bismarck v. Altevogt*, 353 N.W.2d 760 (N.D.1984) [jury trial rights]; *State v. Nordquist*, 309 N.W.2d 109 (N.D.1981) [grand jury protections]; *State v. Lewis*, 291 N.W.2d 735 (N.D.1980) [right to appeal]; *State v. Stockert*, 245 N.W.2d 266 (N.D.1976) [protection from illegal searches]; *Johnson v. Hassett*, 217 N.W.2d 771 (N.D.1974) [right to uniform application of laws]; *see also State v. Matthews*, 216 N.W.2d 90, 99 (N.D.1974) [broader standing to challenge illegal searches].

[¶ 52] With regard to Article I, Section 8 (formerly Section 18) specifically our Court has stated:

> The fourth and fourteenth Amendments to the United States Constitution and Article I, Section [8] of the North Dakota Constitution prohibit unreasonable searches and seizures. The *guiding principle* behind these prohibitions *is to safeguard personal privacy and dignity* against unwarranted intrusions by the State. To realize this principle, all evidence obtained in searches and seizures which transgress the commandments of the fourth amendment to the federal constitution has been made inadmissible in state courts by the United States Supreme Court.

*State v. Phelps*, 286 N.W.2d 472, 475 (N.D. 1979) (citations omitted and emphasis added.)

Also in *Sakellson*, our Court stated "[t]he primary policies underlying the knock-and-announce rule are the *protection of privacy* in the home and the prevention of violent confrontations." 379 N.W.2d at 782 (emphasis added). Our Court's emphasis on this very important policy underlying the right to be free from unreasonable searches and seizures cannot be summarily dismissed in an analysis of the purposes underlying the exclusionary remedy in North Dakota. It is also important to note that our Court has specifically construed the search and seizure provision of our state constitution and concluded it granted protection against a warrantless search regardless of whether the search conformed to the federal constitution. *See State v. Stockert*, 245 N.W.2d 266, 271 (N.D.1976) (holding search violated state constitution and recognizing states can impose higher standards than the federal standards); *see also State v. Matthews*, 216 N.W.2d 90, 98 (N.D.1974) (recognizing a broader standing right to contest an illegal search than may be required by federal standards).

[¶ 53] The history of our statutory law also shows our legislature implemented Article I, Section 8 by enacting N.D.C.C. § 19–03.1–32 thereby manifesting an intent to guard against the issuance of no-knock warrants without probable cause and afford our citizens greater protection against unreasonable searches and seizures than the federal constitution. In *State v. Orr*, 375 N.W.2d 171, 177–78 (N.D.1985), our Court, in analyzing a defendant's right to counsel under our state constitution, recognized that legislative action to "zealously" guard a right illustrates a special regard for that right in our state. N.D.C.C. § 19–03.1–32 has been a part of our law since the enactment of the Uniform Controlled Substances Act in 1971. *See* 1971 N.D. Sess. Laws ch. 235, § 32(3). The existence of this statutory protection for twenty-seven years supports a constitutional interpretation consistent with that intent.

[¶ 54] Finally, other states have confronted the issue of whether to apply the good faith exception to the exclusionary rule enunciated in *Leon* under their own constitutions. *See, e.g., Edmunds*, 586 A.2d. at 899–900 (discussing the decisions of states rejecting and adopting the good faith exception); *see also* Hall, *Search and Seizure*, § 5:32, at nn. 72 &

73 (2d ed.1993) (for a compilation of states rejecting and adopting the exception). The *Edmunds* court carefully reviewed the rationale upon which these other state courts relied in their analysis. 586 A.2d at 900–01. The court concluded:

> [G]iven the strong right of privacy which inheres in Article 1, Section 8, as well as the clear prohibition against the issuance of warrants without probable cause, or based upon defective warrants, the good faith exception to the exclusionary rule would directly clash with those rights of citizens as developed in our Commonwealth over the past 200 years, ... From the perspective of the citizen whose rights are at stake, an invasion of privacy, in good faith or bad, is equally as intrusive.

*Id.* at 901.

[¶ 55] I, therefore, respectfully dissent, because I believe our Court should address the issue of whether to adopt or reject the good faith exception to the exclusionary rule under Article I, Section 8 of the North Dakota Constitution, based on a thorough and considered analysis of North Dakota history, the origin of the right, our own precedent, related case law from other jurisdictions, subsequent legislation, and the purposes of Article I, Section 8 our Court has recognized.

[¶ 56] Mary Muehlen Maring